**UNITED STATES of America,
Appellee,**

v.

**Mark WEINTRAUB, Appellant.
No. 464, Docket 33718.**

United States Court of Appeals,
Second Circuit.

Argued Jan. 15, 1970.

Decided June 23, 1970.

Victor Rabinowitz, New York City, (Rabinowitz, Boudin & Standard, New York City, Joan Goldberg, New York City, of counsel), for appellant.

Vincent J. Favorito, Asst. U. S. Atty. (Edward R. Neaher, U. S. Atty., for the Eastern District of New York, of counsel), for appellee.

Before MEDINA, WATERMAN and SMITH, Circuit Judges.

J. JOSEPH SMITH, Circuit Judge:

Appellant, a Selective Service registrant, convicted on trial to the court, jury having been waived, in the United States District Court for the Eastern District of New York, S. Hugh Dillin, *Judge,* of unlawfully failing and refusing to submit to induction into the Armed Forces of the United States, appeals on the ground that the order for induction was invalid because in violation of the order of call provision of the Act. We find no error and affirm the judgment.

In United States v. Sandbank, 403 F.2d 38 (2 Cir., Oct. 31, 1968) we assumed *"arguendo* that proof of an im-

proper call up would constitute a valid defense" and held that the government need not show as part of its case in chief that the call up was in proper order, but that the registrant could show that the call up was invalid as part of his defense, with the right to the government to rebut such evidence, citing the Fifth Circuit's decisions in Lowe v. United States, 389 F.2d 51 (5 Cir. 1968) and Greer v. United States, 378 F.2d 931 (5 Cir. 1967).

■ In Oestereich v. Selective Service Board, 393 U.S. 233, 89 S.Ct. 414, 21 L.Ed.2d 402 (1968), and Breen v. Selective Service Board, 396 U.S. 460, 90 S.Ct. 661, 24 L.Ed.2d 653 (1970) the Court permitted pre-induction review of orders to report for induction, based on denial of statutory exemption or reclassification under an illegal delinquency regulation, action by a Board in a "blatantly lawless manner." Unless in such exceptional circumstances, however, review of the action of the boards may be had only (after exhausting administrative remedies, Falbo v. United States, 320 U.S. 549, 64 S.Ct. 346, 88 L.Ed. 305 (1944)) in defense to a criminal prosecution, as here, or on habeas corpus after induction. Estep v. United States, 327 U.S. 114, 66 S.Ct. 423, 90 L.Ed. 567 (1946); Clark v. Gabriel, 393 U.S. 256, 89 S.Ct. 424, 21 L.Ed.2d 418 (1968).

We are here faced with the problems of the quantum of proof necessary to establish the defense or rebut it, and the availability of proof of the propriety of board rulings on the order of call of other registrants in the light of the statutory confidentiality of their files.

■ We start with the statutory direction that the decisions of the boards shall be final, 50 U.S.C. App. 460, held to bar judicial review unless lacking any basis in fact. Estep v. United States, *supra*; United States v. Seeger, 380 U.S. 163, 85 S.Ct. 850, 13 L.Ed.2d 733 (1965). To meet this strict demand in an attack on another's classification, deferment or postponement of call a defendant needs to show action by the board so lacking in support in the record as to be arbitrary and capricious.

*Estep* makes plain that under the statutory direction that the decisions of the boards shall be final (50 U.S.C. App. 460) even in a criminal prosecution "the courts are not to weigh the evidence to determine whether the classification made by the local boards was justified. The decisions of the local boards made in conformity with the regulations are final even though they may be erroneous. The question of jurisdiction of the local board is reached only if there is no basis in fact for the classification which it gave the registrant," 327 U.S. at 122–123, 66 S.Ct. at 864. See also United States v. Seeger, 380 U.S. 163, 185, 85 S.Ct. 850, 864 (1965).

■ Here the Form 102 [1] showed an apparent departure from the order of call in that defendant was called prior to 18 others who appeared by the Form 102 to be subject to call before defendant. This was enough to call for explanation, which the government sought to provide by having a clerk of the board testify from the registrants' files as to the explanation for each. Of the 18, 6 were New Mental Standards cases,[2]

---

1. Form 102 is a public register of all registrants and their current classifications. For many reasons this Form 102 is not intended to and does not contain all of the data pertaining to the many thousands of registrants. Nor is this Form used or even referred to in the preparation of the calls for induction, which are uniformly based upon the more reliable files of the individual registrants.

2. The New Mental Standards, which became effective on December 1, 1966 were a reduction in the minimum mental re-

quirements for induction into the Armed Forces. In the instant case each of the six registrants who were New Mental Standards cases had previously been found ineligible for induction on mental grounds. The procedure used in processing them under the New Mental Standards was for the local board to send their papers to the Armed Forces Examining and Entrance Station where they had previously been tested. They were then found acceptable under the new standards and were reclassified I–A.

The Director of Selective Service estab-

8 were listed ahead of defendant as the result of clerical errors in the Form 102, and 4 were registrants either with appeals pending or unresolved requests for hardship deferments. An inspection of the files by the trial judge and this court on review supports the testimony.

 The principal contention of the appellant is that counsel for the defense should have been allowed to see the files and determine for himself whether any material therein could have based an attack on cross-examination on the board's determination which might have demonstrated a lack of basis in fact for the determination. We think this contention well founded. A defendant is entitled to such an inspection, subject to protective order by the court to mask the names or by other means prevent public disclosure of the content of the files, so that without violating the confidentiality of the files he may properly determine for himself whether there is a proper foundation for the board's apparent deviation from the order of call suggested by the Form 102, see Alderman v. United States, 394 U.S. 165, 89 S.Ct. 961, 22 L.Ed.2d 176 (1969), and

so that a proper record may be preserved for appeal. This was not done here as fully as we would require. We find in this error no ground for reversal in this case, however. A review of the files demonstrates that there was in the files before the court a basis in fact for the board's determination in the case of each registrant passed over, and this was sufficiently pointed out in each case to counsel.[3]

In the light of the narrow scope of review of the board's action we find no harmful error in this particular case in such restriction on examination of the files as was imposed here, for clearly it would have profited this particular defendant nothing to have had an unimpeded recourse to the files. See footnote 4 *infra.* Compare Roviaro v. United States, 353 U.S. 53, 77 S.Ct. 623, 1 L.Ed.2d 639 (1957); McCray v. Illinois, 386 U.S. 300, 309–313, 87 S.Ct. 1056, 18 L.Ed.2d 62 (1967). The "complexity and difficulty of the judgments involved" do not approach those in cases involving electronic surveillance, see Alderman v. United States, 394 U.S. 165 at 182–183, n. 14, 89 S.Ct. 961.[4]

lished a special order of call for New Mental Standards cases. When the calls for the month were prepared for each state by the National Headquarters of the Selective Service System, the call indicated the number of New Mental Standards registrants to be included separately from other registrants. The State Director of Selective Service then allocated the quota of regular and New Mental Standards registrants to the various local boards under his jurisdiction. Delivery lists were kept separate. Local Board No. 65 was requested to select and deliver for induction 39 regular registrants and 1 New Mental Standards registrant in June, 1967.

We conclude that the special treatment of New Mental Standards registrants was proper under the applicable Selective Service Regulations. The Director of Selective Service is empowered, at any report for induction, to postpone "for a time prior to the issuance of orders to good cause" the issuance of an induction order "until such time as he may deem advisable." 32 C.F.R. § 1632.2(a) (1970). There is no restriction of this power to individual registrants; thus, the

Director, pursuant to this section, can postpone the induction of a class of registrants if he has good cause for doing so. The reasons for assimilating New Mental Standards registrants into the Army at a slower rate than if they were incorporated *en masse* into the pool of registrants available for service are obvious. It was deemed undesirable to have any substantial numbers of these New Mental Standards registrants inducted into the Armed Forces at one time.

3. What the trial judge did was to take each individual file in turn, examine the contents of the file, and select the papers bearing upon the availability for induction of the particular registrant. These papers were then shown to defense counsel and marked in evidence. That the 18 registrants above referred to were not subject to call before the defendant was established beyond peradventure of doubt.

4. Turning to the particular registrants who were passed over the first was (1) R. F . . .. The Executive Secretary, with the F . . . file before her, testified that F . . . was not available for induction on June 8, 1967 because

he was married prior to August 26, 1965. The trial judge then examined the contents of the file, handed to counsel for defendant the documents establishing the marriage, the continued relationship of man and wife and the action of the Board classifying F . . . as 1–A, Group 4. The ruling is significant:

> The Court: These are confidential records, and I think that in such a situation it is the prerogative of the Court, in the interest of justice, to look at the records and to permit you to see those which appear to bear on the issue—to see them, to hold them in your hand, to look at them, and thereafter to read them in the record. And you may do that, or I will or the witness will. It makes no difference as long as it is in the record.
>
> Now, with regard to anything in these files that is and should be confidential—as, for example, the sex life of the registrant or some such thing, which would have nothing whatever to do with this case—I will keep them confidential.

The next registrant to be examined into was (2) A. S . . . . He turned out to be a man who registered in France and has never returned to the United States. Documents from the file were shown to counsel for the defense and read into the record. He claimed French and Mexican citizenship because born of a French father and because born in Mexico. His aunt had telephoned the Board stating "he has been living in France all these years" and had served in the French armed forces.

The next was (3) A. Z . . . who was found not available for induction on June 8, 1967 because on June 5, 1967 he had filed with the Board a request for an interview and a hardship deferment. He had also requested a hardship deferment on May 23, 1967. Z . . . was a native of the Philippines and claimed he was the sole support of his mother who still lived in the Philippines. Various affidavits and other papers in the file were shown to defense counsel. On June 21, 1967 the Board decided to call Z . . . for an interview, and he was finally classified 3–A on September 13, 1967.

The next file produced was that of (4) D. S . . . . He was not available for induction on June 8, 1967 because he had made a timely request for a hearing and appeal. He had been reclassified 1–A on March 15, 1967, and filed his appeal on March 23, 1967. There was a hearing on April 12, 1967; on May 3,

1967 the file was sent to the Occupational Advisory Committee of New York City and S . . . wound up 2–A on September 12, 1967. The petition received by the Board on March 23, 1967 and several other papers in the file were shown to counsel and marked in evidence. He was a staff pharmacist working in various hospitals.

Next came (5) D. B . . . . He was not available for call on June 8, 1967 because he had already been ordered for induction on March 27, 1967. The notice of induction had been returned by the Post Office and the Board did not know where he was. It was shown to counsel for the defense and marked as a Defendant's Exhibit. There was much other material in the file, some of it quite detrimental to the Registrant but nothing that could by any stretch of the imagination provide material for effective cross-examination on the subject of his availability for induction on June 8, 1967.

The file of (6) G. G . . . was then produced. He was not available for induction on June 8, 1967 because he was in 1–A, Group 4, married before August 26, 1965. The marriage data in the file was shown to defense counsel and marked in evidence as a defense Exhibit.

Next came (7) G. H . . ., Jr. He was not available for induction on June 8, 1967 because he had made a timely request for appeal. The papers were shown to defense counsel and marked as a defense Exhibit. The basis of his appeal was his physical condition. He was later disqualified.

(8) C. M . . . came next. He was not available for induction on June 8, 1967 because he was a New Mental Standards registrant. A document indicating that the registrant was found qualified for induction as of March 23, 1967 was shown to defense counsel.

(9) E. K . . . was another New Mental Standards case. The documents were shown to defense counsel and marked in evidence as a defense Exhibit.

(10) E. S . . . was not available for induction on June 8, 1967. He was a registrant who had already signed up for the Reserves. While his request for an appeal or personal appearance may have been untimely because it was made 12 days after the mailing of his notice of classification, rather than the required 10 days, he was still unavailable for induction because he had not had a pre-induction physical or mental examination. He was finally classified I–D, which means he was a member of a Reserve Unit or the National Guard. One or more of the documents in the file were shown

We have considered the other points raised by appellant including the claim that the Local Board erred in not reopening his case, and we find no merit in any of them. See Paszell v. Laird, 426 F.2d 1169 (2d Cir., April 8, 1970).

Judgment affirmed.

to defense counsel and marked as a defense Exhibit.

(11) T. L . . . was a New Mental Standards case. So was (12) L. H . . . but he wound up 3–A. Certain documents were shown to defense counsel and marked in evidence.

(13) T. K . . . took an appeal, was ordered for physical examination and he requested a transfer to Florida where he was then residing. He was ordered to report for his first physical examination ever in Florida on May 29, 1967, and at the conclusion of this examination his acceptability was undetermined. He was then ordered to appear for further medical consultation in Florida on June 20, 1967. The documents were shown to defense counsel and marked Defendant's Exhibit O.

(14) A. C . . . was classified 2–S on November 2, 1966. The file showed that this Registrant had never been classified 1–A. The entry in the large public record Form 102 was a clerical error.

(15) K. C . . . was not available for induction on June 8, 1967 because he was classified 1–Y on September 25, 1963 and was still in that classification on June 8, 1967. He had previously served in the Armed Forces and had been discharged. It is at this point that defense counsel made the demand that he see the documents in the file as he had been permitted to do on other occasions. The judge thought this was just too much as the man had already served in the Armed Forces, so he facetiously replied: "Oh, I think you can take my word for it." The trial judge later returned to the C . . . file, produced a document from the United States Air Force, showed it to counsel and it was marked.

(16) A. T . . . was another New Mental Standards case. Documents were shown defense counsel and marked.

(17) J. S . . . was another New Mental Standards case and the Board did not know of his whereabouts at the time it sent him a notice of delinquency on June 7, 1967. The Board had not reached him in the order of call under New Mental Standards. Documents showing that he had disappeared were shown to defense counsel and marked.

(18) P. D . . . had been classified 2–S on January 11, 1967. He was never 1–A. This is another clerical error in the Form 102 where 1–12–67 was erroneously copied as 1–12–68.