**UNITED STATES of America,**

**v.**

**Gregg Steven STRAYHORN, Defendant.**

**No. 71 Cr. 976.**

United States District Court,
S. D. New York.

May 23, 1972.

Whitney N. Seymour, Jr., U. S. Atty., S. D. N. Y., by George E. Wilson, Sp. Asst. U. S. Atty., for plaintiff.

Frederick H. Cohn, New York City, for defendant.

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

TYLER, District Judge.

Defendant having waived trial by jury, this case was tried to the court on March 22, 23, 27 and 30, 1972. Because of the nature of the issues raised in this selective service case, decision was reserved and post-trial briefs of the parties were thereafter submitted. Upon consideration of the latter and the entire record, there follow the findings of fact and conclusions of law in this case. See Rule 23(c), F.R.Cr.P.

Defendant, a member of the Black Panther Party, was indicted for violating § 462(a) of the Military Selective Service Act of 1967, as amended, and 32 C.F.R. 1632.14. Specifically, defendant was accused of willful failure to report for induction on May 26, 1970 as ordered in writing (SS Form 252) by his board, Local Board 16, Manhattan.

At trial, defendant did not deny receipt or knowledge of the order of induction. From writings of defendant to Local Board 16, there is no doubt whatsoever that he knowingly and purposefully refused to respond to that order and failed to report to the Whitehall Street induction center on May 26, 1970.

Gregg Strayhorn was born on August 16, 1949. On August 18, 1967 he registered with Local Board 16. Several months later on November 18, 1967 defendant was classified 1A. Despite notification of his right to a personal appearance and appeal, the files indicate that defendant exercised neither right nor opportunity. On November 12, 1968, defendant was given his physical examination, as a result of which he was found fully acceptable for service on December 2 of that year.

In 1969 Strayhorn received his first order from Local Board 16 to report for induction into the armed forces on September 26, 1969. This mailed order was returned by the United States Postal Service marked "addressee unknown." Thereafter, in early December, 1969, the

Board learned of a new address for defendant. It was not until May 13, 1970, however, that the Board mailed defendant his second order to report for induction on May 26, 1970. It is that order, of course, which is the subject of the indictment in this case.

Because there is no doubt whatever that defendant willfully failed to report on May 26, the trial of this case was devoted in the main to certain affirmative defenses asserted by Strayhorn and pressed for him by his able lawyer. The issues thereby engendered will be discussed hereinafter.

## DEFENDANT'S AFFIRMATIVE DEFENSES

A. *The defense that defendant is entitled to exemption as a conscientious objector.*

■ For the first time, Strayhorn raises in his post-trial brief the contention that his letter to Local Board 16 dated September 27, 1968 constituted information requiring treatment of defendant as a *bona fide* claimant for conscientious objector classification. I cannot view or construe the September 27th letter of Gregg Strayhorn in that light. As I read it, the letter represents Strayhorn's efforts to explain his failure to appear for a physical examination:

"I did not show up for my physical because I do not think that I am obligated to do anything for people who oppress, murder and exploit all non-whites on the face of the earth. Furthermore, if the government wants to continue their course of destruction upon all non-*pigs they will do it without me.*" (emphasis as it appears in defendant's letter)

Further, I find that defendant by this letter was expressing his political views, which, though doubtless held with utmost sincerity, were not expressions of convictions of religion or conscience. See Gillette v. United States, 401 U.S. 437, 454–460, 91 S.Ct. 828, 28 L.Ed.2d 168 (1971).

If one were to look to other correspondence or information completed by defendant in various forms, it still does not appear that Strayhorn ever brought sufficiently to the attention of Local Board 16 any claim for or information tending to suggest that he might be entitled to classification as a conscientious objector. It is true that in SS Form 127, which was filled out in part by defendant and submitted to the Board, he indicated in substance that he would not fight for this country (". . . for [pigs] who constantly oppress blacks"). Somewhat similar is another letter received by the Board on January 20, 1970 wherein defendant sets forth similar political views. There can be no doubt that these views of Strayhorn led him to refuse to submit to induction; but, as indicated, they were sectarian views having no place within the penumbra of claims of conscience or religious opposition to all wars. Gillette v. United States, *supra.*

B. *Defendant's claim that his security questionnaire was improperly processed and filed.*

■ At trial, defendant clearly and consistently argued that since he early made known to Local Board 16 the fact that he was a member of the Black Panther Party, it necessarily follows that he was unfit for military service as a security risk and thus should have been rejected for call on this ground alone. As a corollary to this principal argument, defendant urges that the absence of a copy of the DD98 security form from his selective service jacket maintained by the Board means that his security status was improperly reviewed by the Board and the Army.

As explained by the trial testimony of Captain James Vopni and documentary evidence (e. g. Gov. Ex. 11), there can be no doubt that defendant's case in its security aspects was processed in accordance with then currently applicable regulations. Defendant was so informed in December, 1968 when he was notified that he was acceptable for military service. The asserted issue of the absence of a copy of the DD98 form in defendant's selective service jacket has no mer-

it. No case or regulation has been cited for the proposition, implicitly relied upon by defendant, that a copy of the DD98 must be maintained in his selective service file. The point of the matter is that, as stated, the security procedures were properly applied in Strayhorn's case; where the DD98 reposed at a given time is of no legal significance.

C. *Defendant's claim that he was called out of proper sequence or order.*

The most serious contention raised by defendant in this case—and the one which took the bulk of the trial time—is that he was called out of proper sequence from the pool of men who had been classified by Local Board 16 as 1A and thus available for military service.

Before discussing the ramifications of this claim, it is important to recite an additional fact or circumstance relevant to this defense. There occurred in July, 1969 an event which, though certainly not unique in the recent history of this country, coincidentally effected the operations of Local Board 16 and other New York City Boards sharing common facilities at 321 West 44th Street, Manhattan. After hours one evening, the offices of Local Board 16 and other Boards at that address were broken into and "trashed" by unknown persons. As a result of this breaking and entering, virtually all of the records of Local Board 16 were thrown about in hopeless disorder after the files had been ransacked by the intruders. In some cases, filed documents were lost forever. Several months elapsed before Local Board 16 was able to reconstruct its files; even today, certain papers have not been retrieved and thus are missing from some of the Board's files.

 The order of call defense is of relatively recent origin and almost certainly the result, at least in part, of the political and emotional agonies of the war in Southeast Asia. In this case, defense counsel was given opportunity to analyze 44 file jackets, which counsel for both parties agreed were pertinent to this defense. Moreover, capable defense counsel properly raised this issue at trial, thereby shifting the burden to the government to prove that the defendant was called in reasonably proper order and without arbitrary or capricious conduct on the part of Local Board 16. See United States v. Weintraub, 429 F.2d 658 (2d Cir. 1970), cert. denied 400 U.S. 1014, 91 S.Ct. 572, 27 L.Ed.2d 627 (1971); United States v. Dudley, 451 F. 2d 1300 (6th Cir., 1971). Also, as defense counsel urges, the aforementioned cases and other authorities properly can be construed to hold that once the defense has been adequately raised, the prosecution has the customary burden of proof beyond a reasonable doubt of the propriety of the order of call. On the other hand, in order to flesh out the specific content of this burden, one must recognize that the government is obliged to prove in fact beyond a reasonable doubt that Local Board 16 did not violate pertinent regulations, most particularly 32 CFR 1631.7 dealing with order of call, or otherwise act arbitrarily or discriminatorily in making the call identified as No. 231 which is pertinent in this case. See United States v. Weintraub, *supra.* Thus, evidence of insignificant delays or minor errors not substantially affecting the order of call would be insufficient to defeat an otherwise adequately proved prosecution case. United States v. Lybrand, 279 F. Supp. 74, at 77 (E.D.N.Y., 1967); United States v. Griglio, 334 F. Supp. 1283 (D.C.Mass., 1970); see, generally, Estep v. United States, 327 U.S. 114, 66 S.Ct. 423, 90 L.Ed. 567 (1946).

 To turn to the evidence in this case, it should be initially noted that defendant contends that there were two calls for the relevant month in question, September, 1969. In point of fact, however, the evidence indicates that there was only one call, No. 231, for September, 1969, which relates to the defendant in this case. It is true that that total call of 38 persons from Local Board 16 was divided into what is called a "split delivery", i. e. one group of the call to report to Whitehall Street on September 26 and the second on September 29th. As defense counsel candidly concedes in his post-trial memorandum, he can find

no judicial or regulatory authority which precludes a "split delivery" of one call. Thus, it must be concluded beyond any doubt that the call for defendant's induction, No. 231, was for 38 registrants.

Since defendant was concededly # 19 in the total call for September, 1969 of 38 men, both sides have explicitly recognized that in order for the defendant to prevail on his defense, the prosecution must "lose" on 20 registrants or more out of the 44 individuals which by implicit agreement were challenged at the trial of this case. Put differently, the parties apparently concede that if the government "loses" on 19 or less of the 38, the order of call defense must fail.

To summarize my findings in this case, my review of the evidence leads me to conclude as follows in respect to the order of call issue:

1. Defendant and his counsel have stipulated that the following files were properly "by-passed" by the Board: Nos. 17, 22, 24, 26, 29, 34, 35, 38, 41 and 42.

2. The benefit of doubt should be given to defendant in respect to the following men in the group: numbers 3, 4, 6, 9, 10, 12, 13, 16, 18, 19, 20, 25, 28 and 37. To be blunt about the matter, in most of these cases, to credit doubt to defendant may well amount, as a practical matter, to undue permissiveness by the fact finder. The reasons for this are twofold: (1) the fact that the above files in large part were rendered unclear in the documentary sense by the "educated" ransacking of the Board's files on the evening of July 1 or the early morning hours of July 2, 1969;[1] and (2) my uncertainty as to the wisdom and meaning of certain court decisions in this general area—especially in application to the peculiar facts of this case. See United States v. Dudley, 451 F.2d 1300, at 1305 (6th Cir., 1971); United States

v. McCreery, W.D.Wis., 71 Cr. 37, decided April 20, 1972 (Doyle, D.J.). The latter authorities suggest that where case files and documents are not produced and, in their place, the government offers expert testimony of the status of relevant files, this is insufficient to rebut an order of call defense. Here, of course, the government, because of the July, 1969 "trashing" incident, had to rely in major part upon the expert testimony of Major Maher to fill the gaps presented in most of the files above listed. Since there is no reason to discredit the testimony of Major Maher and, even more important, because there is no evidence that Local Board 16 was proceeding in less than good faith under difficult circumstances, I am by no means totally persuaded that the reasoning of *Dudley* or *McCreery* should apply to this case. On the other hand, no one suggests that Strayhorn had any role in the July affair; hence, it can be plausibly submitted that the government's bad fortune should not be heaped upon him. It is with this last approach in mind that I have determined to credit Strayhorn with reasonable doubt in respect to the files listed hereinabove.

3. The prosecution has proved beyond a reasonable doubt that the following registrants were "by-passed" properly and in good faith by the Board in September, 1969:[2]

a. Nos. 1, 2 and 5 (Group IV—"Kennedy Married").

b. Nos. 7, 11, 23, 30, 31, 32, 33, 36, 39, 40 and 43 (appeals pending).

c. No. 8 (pending conscientious objector application).

d. No. 14 (review and reclassification pending on and just before September 9, 1969).

e. Nos. 15 and 44 (delinquents whose physical examinations had not been completed).

---

1. The sacking of the Board files was not a random affair. The culprits focused their depredations on files of (1) registrants classified 1A and (2) registrants marked as "delinquents"; on the other hand, they left untouched the files of deferred registrants!

2. The material in parentheses is intended as a synoptic description of the status of the numbered files as of September 9, 1969 and just prior thereto.

f. No. 21 (reconstructed file—due to destruction by July intruders—which was the subject of a reopened classification).

g. No. 27 (pending application for student deferment).

Having already determined that there is no doubt whatsoever but that Gregg Strayhorn willfully and knowingly refused to report for induction, I determine that the government has proved beyond a reasonable doubt that defendant's affirmative defenses cannot prevail. Hence, he is convicted of the charge in this indictment.

It is so ordered.