**UNITED STATES of America,
Petitioner,**

v.

**Jack B. WEINSTEIN, United States
District Judge, Respondent.**

**No. 609, Docket 74–2595.**

United States Court of Appeals,
Second Circuit.

Argued Jan. 6, 1975.

Decided Jan. 30, 1975.

Edward R. Korman, Chief Asst. U. S. Atty. (David G. Trager, U. S. Atty. for

the Eastern District of New York, Brooklyn, N. Y., of counsel), for petitioner.

Louis Lusky, New York City, for respondent.

Michael E. Tigar, Washington, D. C. (Williams, Connolly & Califano, Washington, D. C., of counsel), amicus curiae urging denial.

Before KAUFMAN, Chief Judge, and FEINBERG and MANSFIELD, Circuit Judges.

MANSFIELD, Circuit Judge:

Pursuant to 28 U.S.C. § 1651 the Government seeks a writ of mandamus directing United States District Judge Jack B. Weinstein ("respondent") to vacate orders entered by him in November 1974, United States v. Lockwood, 386 F.Supp. 734 (E.D.N.Y.) requiring the Government to produce the Selective Service files of 23 delinquent registrants who have failed to appear in criminal proceedings pending against them.[1] Judge Weinstein ordered that the files be made available for discovery and inspection by an attorney appointed by him to represent the fugitive defendants without their authority and by another attorney appearing as amicus curiae.

Since the purpose of the court-initiated discovery was to determine whether motions might be made by the court-appointed representative for dismissal of the indictments, the Government also seeks an order barring respondent from entertaining such motions. We agree with the Government that the respondent lacks the power to order the Government to make the discovery directed by him and that, absent consent by the defendants, the court-appointed counsel lacks authority to represent them. Accordingly, the petition is granted.

On September 10, 1974, respondent on his own initiative entered an order declaring that the defendants in some 26 Selective Service criminal cases pending before him were allegedly fugitives without representation.[2] He took judi-

1. United States v. David Arthur Lidov—68 Cr. 67;

United States v. Michael Rosenbaum—68 Cr. 204;

United States v. Barry Lawrence Friedman —69 Cr. 54;

United States v. Alan Stephen Dorn—69 Cr. 57;

United States v. Arthur Marc Campus—69 Cr. 182;

United States v. Maurice A. Henry—71 Cr. 1338;

United States v. James Ralph Blumer—72 Cr. 478;

United States v. Thomas Martin Austin—72 Cr. 494;

United States v. Ronald Edward Territo— 72 Cr. 622;

United States v. Paul Parker—72 Cr. 739;

United States v. Sidney E. Salzmann—72 Cr. 740;

United States v. Charles Penn Sleeth—72 Cr. 757;

United States v. Alvin Marris Higgs—72 Cr. 780;

United States v. Robert Richard Perez—72 Cr. 803;

United States v. Albert Antonio Martinez— 72 Cr. 810;

United States v. Edward James Luerssen— 72 Cr. 824;

United States v. Michael David Frazier—72 Cr. 834;

United States v. Thomas John Collura—72 Cr. 1028;

United States v. James Thomas Bezousek— 72 Cr. 1290;

United States v. Paul Estremera—72 Cr. 1291;

United States v. Lester Patrick Nolan—73 Cr. 41;

United States v. Michael David Powers—73 Cr. 126;

United States v. Kenneth Paul Albanese— 73 Cr. 132.

On January 27, 1975, the Government advised that it no longer seeks relief with respect to defendant Paul Estremera, 72 Cr. 1291, for the reason that, upon being extradited to the United States on other charges, Estremera appointed Jesse Berman, Esq., to represent him in lieu of Professor Lusky, and the Government proposed to turn over his Selective Service file to Mr. Berman for review.

2. One of the 26 cases in which respondent's orders were entered has been terminated by reason of the defendant's death (United States v. Lockwood, Cr. 43456 (1954)). The Government has moved to dismiss two others, one because of the inadvertent destruc-

cial notice that the President and Congress were considering some form of amnesty for fugitives in such cases, which might affect their rights. Without notice to the Government or to the defendants he thereupon appointed Professor Louis Lusky of the Columbia University School of Law to represent the defendants.

Upon learning of the order the Government advised the court that, if the fugitive defendants should return to the United States, it would be willing to cooperate in the handling of the charges against them in a manner consistent with the formulation of new guidelines for such cases, but that in its opinion the court's order was invalid. Following a short stay, respondent held a hearing and within a few hours filed a memorandum decision and order upholding his earlier ex parte order. His memorandum decision took the view that fugitive cases were artificially inflating the caseload of the court and the prosecutor. In order to guarantee "prompt disposition" of these cases he proposed to call them up in accordance with the practice followed by him in the handling of fugitive cases, which was to determine whether the Government was making reasonable efforts to apprehend the fugitives, whether the public or the defendants were being prejudiced by the delay, and whether the indictments should not be dismissed.

Respondent did not state the manner in which the fugitive defendants (or, for that matter, anyone else) might be prejudiced by the pendency of the Selective Service indictments other than to suggest that the President's Amnesty Proclamation, characterized by respondent as a "pretrial diversion or deferred prosecution scheme," might present an unfair

choice to guiltless defendants since some of the indictments might turn out to be "invalid" and the President's proposal might subject innocent defendants to pressure to accept the Amnesty Plan "alternative service" rather than face trial. However, respondent did not suggest that, if a fugitive should return to the jurisdiction, he could not obtain a fair trial in which, if the Government should fail to prove its case beyond a reasonable doubt, the defendant would be acquitted.[3] Respondent therefore proposed to "screen" the Selective Service cases in question to determine whether some or all might be dismissed on the basis of defenses disclosed by the Selective Service files. Toward that end, notwithstanding the defendants' absence as fugitives from the jurisdiction and their failure to authorize any such action to be made on their behalf, respondent denied the Government's motion to set aside his September 10, 1974, order.

In proposing to proceed without the presence or authorization of the defendants to decide motions that might be made by respondent's appointee on their behalf, respondent relied upon decisions upholding the court's power, pursuant to Rule 12(b)(2), F.R.Cr.P., *sua sponte* to dismiss an indictment appearing insufficient on its face and to dispense with the defendants' presence upon hearing pretrial motions. However, no authority was cited for the proposition that a trial court might, without a defendant's presence or consent, make an evidentiary disposition of a criminal case upon motion of an attorney acting without the defendant's knowledge or consent.

Having appointed Professor Lusky to represent the fugitive defendants, respondent proposed to entertain motions on their behalf to dismiss the indict-

---

tion of the defendant's Selective Service file (United States v. Wilson, 69 Cr. 155) and the other because the defendant's induction order had been improperly accelerated on account of his failure to complete and return a form claiming conscientious objector classification (United States v. Dewey, 66 Cr. 456). Thus the number of cases was reduced to 23 by the time the present petition was filed.

**3.** Although Judge Weinstein did say "Efficiency rather than fairness may result in the 'relaxation of standards of evidence and a presumption of guilt.' *See* R. W. Balch, Deferred Prosecution: The Juvenilization of the Criminal Justice System, 38 Federal Probation 46, 50 (June 1974)," we do not construe this as meaning that the Government would be relieved of its usual burden of proof.

ments on the ground that the defendants had been denied a prompt trial in violation of the defendants' Sixth Amendment rights, even though prompt trials had been rendered impossible by the defendants having fled the jurisdiction and their never having sought a trial. When the Government submitted affidavits attesting to the fugitive status of 23 of the defendants and the Government's good faith efforts to locate and arrest them, respondent denied the motions of his appointed representative, Professor Lusky, to dismiss the indictments for lack of a speedy trial. However, while apparently unable to find the indictments defective on their face, respondent accepted the suggestion of an *amicus curiae*, Michael Tigar, Esq., that Professor Lusky be permitted to inspect the defendants' Selective Service files with a view to determining whether motions might lie to dismiss the indictments on the basis of defenses appearing in the files. When the Government objected on the ground that the court lacked the power to direct such discovery, respondent ordered that the files be turned over to him so that he might make copies available to Professor Lusky and Mr. Tigar. The Government, while refusing to turn over the files for inspection by Messrs. Lusky and Tigar, advised respondent that it was willing to provide a copy of each defendant's file to the defendant or his authorized representative.[4]

On November 26, 1974, respondent granted the Government's request for a 14-day stay pending its filing of the present petition, which was lodged on December 9, 1974.

## DISCUSSION

 The extraordinary writ of mandamus, which is rarely granted in civil cases, is even less frequently issued in criminal proceedings, principally because of policy reasons based upon the defendant's rights under the Speedy Trial and Double Jeopardy provisions of the Con-

stitution. Will v. United States, 389 U.S. 90, 96, 88 S.Ct. 269, 19 L.Ed.2d 305 (1967). Use of the writ as a substitute for appeal or as a means of circumventing the Criminal Appeals Act is barred. *Id.* pp. 96–97, 88 S.Ct. 269; United States v. Weinstein, 452 F.2d 704 (2d Cir. 1971), cert. denied sub nom. Grunberger v. United States, 406 U.S. 917, 92 S.Ct. 1766, 32 L.Ed.2d 116 (1972). However, in the unusual case where a district judge has clearly exceeded his powers the petition for a writ of mandamus may be granted, see, e. g., United States v. Smith, 331 U.S. 469, 67 S.Ct. 1330, 91 L.Ed. 1610 (1947); Ex parte United States, 287 U.S. 241, 53 S.Ct. 129, 77 L.Ed. 283 (1932); Ex parte United States, 242 U.S. 27, 37 S.Ct. 72, 61 L.Ed. 129 (1916); United States v. Mayer, 235 U.S. 55, 35 S.Ct. 16, 69 L.Ed. 129 (1914); United States v. Dooling, 406 F.2d 192, 198–199 (2d Cir.), cert. denied sub nom. Persico v. United States, 395 U.S. 911, 89 S.Ct. 1744, 23 L.Ed.2d 224 (1969); United States v. Lasker, 481 F.2d 229 (2d Cir. 1973), cert. denied, 415 U.S. 975, 94 S.Ct. 1560, 39 L.Ed.2d 871 (1974); United States v. Weinstein, *supra*, even with respect to an interlocutory procedural order, United States v. Carter, 493 F.2d 704 (2d Cir. 1974); Hilbert v. Dooling, 476 F.2d 355 (2d Cir.) (en banc), cert. denied, 414 U.S. 878, 94 S.Ct. 56, 38 L.Ed.2d 123 (1973).

We believe this to be one of those rare, *sui generis* cases in which unique circumstances require that the writ be granted. For reasons noted below, we are satisfied that the district judge has clearly exceeded his powers. Issuance of the writ will not affect any defendant's constitutional right to a speedy trial, since each is a long-time fugitive who has not sought trial but, on the contrary, by fleeing the jurisdiction, has prevented his case from being brought promptly to trial. Should the indictments be dismissed for failure to comply with the discovery order, the Government is not

---

4. The Government has supplied Professor Lusky and Mr. Tigar with the last known addresses of each of the defendants. Upon oral argument Professor Lusky advised that he had communicated with the defendants and expected to be retained by some of them.

assured of the right to appeal under 18 U.S.C. § 3731. Indeed such an appeal would probably not lie with respect to those cases in which the indictment was filed prior to January 2, 1971, when § 3731 in its present form was enacted, see United States v. Apex Distrib. Co., 270 F.2d 747 (9th Cir. 1959) (en banc), and there is the risk that the Government might be precluded on double jeopardy grounds from appealing dismissals based on facts not appearing on the face of the indictments, see United States v. Jenkins, 490 F.2d 868 (2d Cir. 1973), cert. granted, 417 U.S. 908, 94 S.Ct. 2603, 41 L.Ed.2d 211 (1974); United States v. Velazquez, 490 F.2d 29 (2d Cir. 1973) (dissenting opinion of Chief Judge Kaufman); Note, Government Appeals of "Dismissals" in Criminal Cases, 87 Harv. L.Rev. 1822 (June 1974).

■■■ Turning to the merits, we are satisfied that respondent lacks statutory or inherent power to enter the order challenged by the Government. None of the rules relied upon by respondent supports his action. Rule 16(b), F.R.Cr.P., is unavailing since it authorizes discovery of documentary evidence only upon the defendant's motion and no fugitive defendant in the present case has authorized Professor Lusky to act as his counsel, much less to file such a motion on his behalf. Similarly Rule 17 permits the issuance of a subpoena only upon the request of a "party," which has not been made here. Rule 12(b)(2), which authorizes the court to notice "lack of jurisdiction or the failure of the indictment or information to charge an offense," is limited in scope. See, e. g., Hughes v. Thompson, 415 U.S. 1301, 94 S.Ct. 829, 39 L.Ed.2d 93 (1974). It does not authorize action of the type undertaken by respondent, such as a court-initiated discovery designed to uncover evidence of non-ju-

risdictional defenses not appearing on the face of the indictment, which might then become the subject of unauthorized motions to dismiss, even though such defenses may be waived if not raised by the defendants, see, e. g., United States v. Sisson, 399 U.S. 267, 301, 90 S.Ct. 2117, 26 L.Ed.2d 608 (1969); United States v. Sandbank, 403 F.2d 38, 40 (2d Cir. 1968), cert. denied, 394 U.S. 961, 89 S.Ct. 1301, 22 L.Ed.2d 562 (1969).

■■■ Assuming that the Selective Service files were introduced as exhibits before the Grand Jury which filed indictments against the fugitive defendants, Rule 6(e), F.R.Cr.P., which permits disclosure of matters occurring before the Grand Jury "only when so directed by the court," was not designed as an authorization for pretrial discovery. Its purpose, on the contrary, is to protect the secrecy of the Grand Jury proceedings by restricting disclosure to the exceptional case where a particularized need is shown.[5] Since Selective Service files are confidential in nature, see United States v. Weintraub, 429 F.2d 658, 661 (2d Cir. 1970), cert. denied, 400 U.S. 1014, 91 S.Ct. 572, 27 L.Ed.2d 627 (1971); United States v. Strayhorn, 471 F.2d 661, 665 n.4 (2d Cir. 1972); 32 C.F.R. § 1608.-2,[6] they should not be disclosed to persons other than the government officials concerned or to the defendant or his authorized representative. Neither Prof. Lusky nor Mr. Tigar has been authorized by the defendants to inspect their respective files. In any event the indictments are "not subject to challenge on the ground that the grand jury acted on the basis of inadequate or incompetent evidence." United States v. Calandra, 414 U.S. 338, 345, 94 S.Ct. 613, 618, 38 L.Ed.2d 561 (1974).

■■■ Nor can support for respondent's action be found in Rule 48(b), which per-

---

**5.** In any event it is questionable whether Rule 6(e) applies to documents marked as exhibits before the Grand Jury. Cf. United States v. Interstate Dress Carriers, Inc., 280 F.2d 52, 54 (2d Cir. 1960).

**6.** Section 1608.2 provides in pertinent part that the "records in a registrant's file and the

information contained in such records shall be confidential." The regulation appears to have the force and effect of law, see Paul v. United States, 371 U.S. 245, 255, 83 S.Ct. 426, 9 L.Ed.2d 292 (1963); United States v. Short, 240 F.2d 292, 298 (9th Cir. 1956).

mits the court on its own motion to dismiss an indictment, information or complaint "if there is unnecessary delay in bringing a defendant to trial." Aside from the fact that the delay here is attributable to the defendants' flight, the Selective Service files would not be probative on the issue of a delay that must necessarily have occurred after the action taken by the local Selective Service boards.

 Lastly respondent's action cannot be analogized to the appointment of counsel to represent absent or legally incompetent persons in civil proceedings. See Mullane v. Central Hanover Bank & Trust Co., 339 U.S. 306, 70 S.Ct. 652, 94 L.Ed. 865 (1950). In such proceedings the judgment of the court is binding on the absent or incompetent party, provided due process requirements are satisfied, whereas in a criminal proceeding any action taken by the court at the behest of a representative appointed without the defendant's knowledge or consent could not bind the fugitive defendant. While a defendant may waive his own presence at a hearing of pretrial motions in a criminal case, see Rule 43, F.R.Cr.P., the attorney moving on his behalf must at least have been authorized by the defendant to act as his counsel in the case. None of the decisions cited by respondent supports the proposition that the court may act upon a motion by an unauthorized attorney appointed by the court itself.

The absence of any statutory or inherent authority for district court action of the type taken by respondent is not surprising. The challenged orders violate a fundamental premise underlying our method of administering justice. Ours is essentially an adversarial, not an inquisitorial, system. Whatever may be the judge's role in countries governed by a system of Civil Law, where the judge may by custom engage in investigative or prosecutorial activities, we have chosen to administer justice through courts which are limited to the adjudication of cases and controversies in an adversarial setting. See Art. III, U. S. Constitution; Baker v. Carr, 369 U.S. 186, 204, 82 S.Ct. 691, 7 L.Ed.2d 663 (1962). With rare exceptions a federal court is not authorized to act *sua sponte*; an adversarial interest is essential. Jenkins v. McKeithen, 395 U.S. 411, 423, 89 S.Ct. 1843, 23 L.Ed.2d 404 (1969). Although district judges possess the power to issue writs "in aid of their respective jurisdictions and agreeable to the usages and principles of law," 28 U.S.C. § 1651, no usage or custom exists that permits a judge to appoint himself or a stranger as the representative of a defendant who has fled the jurisdiction in order to avoid facing criminal charges, at least without the fugitive's authority or consent. Indeed, controlling precedent is to the contrary. The flight of a defendant for the purpose of avoiding prosecution or punishment "disentitles [him] to call upon the resources of the Court for determination of his claims," Molinaro v. New Jersey, 396 U.S. 365, 366, 90 S.Ct. 498, 499, 24 L.Ed.2d 586 (1970);[7] see Bonahan v. Nebraska, 125 U.S. 692, 8 S.Ct. 1390, 31 L.Ed. 854 (1887); United States v. Sperling, 506 F.2d 1323 (2d Cir. 1974), Slip Opin. 5637, 5673 n.33; Dawkins v. Mitchell, 141 U.S.App.D.C. 213, 437 F.2d 646 (1970); People v. Genet, 59 N.Y. 80 (1874). Moreover, at one time the penalty for failure to appear could be an order outlawing the defendant. See Chitty, A Practical Treatise on the Criminal Law (1819 ed.), p. 284.

The administration of justice is not served by the court's unilateral *effort to* activate the defense of a criminal case in which prosecution has been frustrated by the defendant's flight from the jurisdiction. In the present cases, for instance, the dormant files are mere statistics

---

7. Molinaro was presaged by Justice Frankfurter's dissenting opinion in Eisler v. United States, 338 U.S. 189, 192, 69 S.Ct. 1453, 93 L.Ed. 1897 (1949), to the effect that Eisler's flight from the United States deprived the Court of jurisdiction. "Since the Court is without power effectively to decide against him, it is without power to decide at all."

which do not preclude the active prosecution of hundreds of other pending viable criminal cases against persons located within the jurisdiction. Nor should the pendency of indictments against fugitives who may be innocent inhibit them from returning to the jurisdiction or coerce them into the performance of alternate service under an amnesty plan. The remedy of a guiltless fugitive, assuming some of the defendants may be so classified,[8] is to avail himself of his Sixth Amendment right to a speedy and public trial, with all the constitutional guarantees associated with it.[9] The Government's failure to prove guilt beyond a reasonable doubt will then lead to his acquittal. In the meantime, no public interest is served by proceeding without his consent or authorization.

■ For the foregoing reasons the petition is granted. A writ will accordingly issue directing respondent (1) to vacate the orders entered by him on November 1, 21 and 26, 1974, ordering that the Selective Service files of each of the above-named 23 fugitive defendants be made available for disclosure to and inspection by Professor Louis Lusky and Michael E. Tigar, Esq., without authority from the defendant whose file is sought, and (2) to cease entertaining motions on behalf of any of the 23 defendants raising non-jurisdictional defenses to the indictments against such defendants, without authority from the defendant or defendants to act on their behalf.

We should make it clear that we do not intend to preclude Judge Weinstein from entertaining motions on behalf of fugitive defendants who have agreed that Professor Lusky or any other attorney represent them. Compare In re Federal Public Defender (D.Ore.1974) (tentative appointment of lawyer under Criminal Justice Act for fugitive Selective Service defendants, subject to their agreement to be represented and their showing of eligibility under the Act).

---

8. Respondent erroneously suggests that, because a large proportion of Selective Service indictments have been dismissed, the indictments which are the subject of his orders may be vulnerable to dismissal on the ground that they "will not be supported by the record." However, the vast majority of such dismissals are attributable to the Government's adherence to a policy of consenting to dismissal upon a defendant's compliance with an order to report for induction or alternative civil work. Hearings before Subcommittee on Administrative Practice and Procedure of the Committee on the Judiciary, 92nd Cong., 2d Sess. p. 396 (1972). The percentage of dismissals because of such compliance with induction orders in the Eastern District of New York is estimated at 85–90%.

9. Indeed, should a defendant's Selective Service file reveal undisputed facts constituting a valid defense to a charge of failure to report for induction, he might seek a dismissal or judgment of acquittal by moving under Rule 12(b)(4), F.R.Cr.P.