**UNITED STATES of America,**
**Plaintiff-Appellee,**

v.

**Joseph Ellwood STEINER, Jr.,**
**Defendant-Appellant.**

**No. 72–1450.**

United States Court of Appeals,
Fifth Circuit.

Nov. 17, 1972.

---

John N. Barnhart, Houston, Tex., for defendant-appellant.

Anthony J. P. Farris, U. S. Atty., Carl Walker, Jr., James R. Gough, Asst. U. S. Attys., Houston, Tex., for plaintiff-appellee.

Before GEWIN, THORNBERRY and CLARK, Circuit Judges.

CLARK, Circuit Judge:

When Joseph Ellwood Steiner, Jr. became 18 years old he registered for the draft with Local Board 59 in Houston, Texas, pursuant to law.[1] Approximately four and a half years later, after high school and collegiate student deferments and numerous delays from claims and appeals within the Selective Service System, Steiner was notified to report for induction and did so. After being found acceptable, he refused to submit to induction. Subsequent to an unsuccessful attempt to interdict further proceedings by way of injunction and habeas corpus relief,[2] he was prosecuted for violation of the Act.[3] After a jury trial conviction, Steiner was sentenced to imprisonment for 30 months. This present appeal attacks the manner in which his classification was made, the composition of Local Board 59, and trial court procedures. The more significant of the Selective Service System attacks relate to the Board's refusals to reopen Steiner's I–A classification to permit consideration of a pre-notice claim to a Class III–A hardship deferment and a post-notice Class I–O, conscientious objector claim. Asserted district court errors relate to the quantum of proof offered to show that Steiner's violation was knowingly committed and to the court's jury instructions on the standards to be used for measuring Steiner's conscientious objector beliefs. We affirm.

In the initial classification questionnaire which he completed on February

---

1. Military Selective Service Act of 1967, 50 U.S.C.A. § 451 et seq., particularly § 454.

2. See Steiner v. Officer in Command, 436 F.2d 687 (5th Cir. 1970).

3. 50 U.S.C.A. § 462(a) provides in pertinent part:
 [A]ny person . . . who . . . refuses . . . service in the armed forces . . . or who in any manner shall knowingly fail or neglect or refuse to perform any duty required of him under or in the execution of this title . . . shall, upon conviction in any district court of the United States of competent jurisdiction, be punished by imprisonment for not more than five years or a fine of not more than $10,000, or by both such fine and imprisonment . . . .

22, 1964, Steiner showed he lived at home with his mother and father in Pasadena, Texas. When asked to list all persons wholly or partially dependent upon him for support, he answered "Not Applicable". That same form required information with regard to any agricultural occupation, including farm ownership and farming experience. Again, his answer was "Not Applicable". His grandmother, Mrs. H. Y. Childress, Columbia, Louisiana, was named as a person other than a member of his household who would always know his address. On June 16, 1966, while still deferred as a college student, Steiner completed a current information questionnaire in which he stated he had no dependents, listed his occupation during this and the previous summertimes as a general laborer for a steel company, and showed that in his college education he was pursuing a major in English in preparation for teaching. He changed the name of the person other than a member of his household who would always know his address, from his grandmother to a minister in Pasadena, Texas. The current information questionnaire which Steiner completed March 27, 1967, contained no significant changes; however he did relist his grandmother as a person other than a member of his household who would always know his address.

On May 30, 1968, the college he had been attending notified the Board that Steiner had completed his college education by graduation. On June 9, 1968, Steiner filled out a current information questionnaire on which he indicated Mr. Erby Meredith of Columbia, Louisiana was the person other than a member of his household who would always know his address. On this form Steiner checked a box which indicated he claimed to have a dependent. He listed his present occupation as "Temporary Machine Operator [for a coffee packing company in Houston, Texas]/Farm Manager". This form was accompanied by a letter stating that Steiner requested an occupational deferment as a farmer. Eight days later Steiner completed and returned the Local Board's form request for agricultural information, in which he disclosed that although record title to the farm appeared in his deceased grandfather's name, he claimed to have been the owner-operator of the farm since becoming "of age". His twenty-first birthday occurred January 22, 1967. He also stated that while his college education had been acquired as his father's dependent, this status had changed upon graduation. He listed the farm's annual crop income at 2400 dollars, and a special income item of 2000 dollars from the sale of all but two head of the farm's livestock. He also stated that his coffee company job in Houston would be terminated in mid-July and that at that time he expected to return to the farm to assist with the harvest. The Board routinely requested confirmation of this agricultural information from the Agricultural Stabilization Conservation Committee of the Louisiana Parish in which the farm was located. This committee replied that to their personal knowledge Steiner was not engaged in the production of any agricultural commodities. In fact they did not connect Steiner with this farm other than that they considered his mother to be one heir to the property. They stated that the farm had been rented on a share basis for several years to a tenant who had three employees and who worked several small farms in the area. Steiner requested and was granted the right of personal appearance in connection with his request for a II–C Agricultural Occupation deferment.[4]

In connection with his personal appearance before the Board, Steiner related that his grandmother, aunt, mother and Steiner himself, were the legal heirs

4. (a) In Class II–C shall be placed any registrant who is employed in the production for market of a substantial quantity of those agricultural commodities which are necessary to the maintenance of the national health, safety, or interest. . . . 32 C.F.R. § 1622.24 (1969).

to the farm under Louisiana law; but that it had always been assumed that the farm would become entirely his property as the oldest living male heir. He advised the Board that he had worked all summers and holidays on the farm prior to commencing his college attendance and that after his four year absence while attending college and working at jobs elsewhere, the farm had seriously deteriorated. He also disputed the adequacy of the help which could be expected from the tenant in future years. Prior to this personal appearance before the Board, Steiner continuously listed his address as that of his parents in Pasadena, Texas. The Board declined to reclassify Steiner as a farmer, and he appealed this action to the State Appeal Board. On oral argument before this court, Steiner conceded that he did not demonstrate sufficient productivity to entitle him to a II–C classification.

Ten days after taking the appeal from the refusal of a farmer deferment, Steiner filed a letter from his grandmother's doctor. The letter said that Mrs. Childress had a heart disease and a glandular dysfunction, had been attended by her grandson during summers and other times when he was out of school, and that "she has requested that if at all possible he be deferred at this time or at least stationed within a reasonable distance to her since her health is precarious."

On October 17, 1968, Steiner filed a dependency questionnaire which had been furnished to him by his Local Board. In this document he claimed that his grandmother and his aunt were dependent upon him and that he contributed an estimated 1800 dollars annually to each of them. The form asserted that these two ladies lived with him on the farm; that neither his mother nor his father could contribute to the support of these claimed dependents; and that his total income during the past 12 months (nine of which had been spent attending college as the dependent of his father) was 4677.69 dollars. 1289.18 dollars of this amount came from salary or wages and 3388.51 dollars came from unspecified "other income". His current job was listed as "Farm Manager (owner)". In response to a question as to the name of his employer, he wrote: "I have always been involved here, but the farm became my full time concern May 30, 1968." He showed the farm to be free of debt and that he was the owner of an automobile used for farm and personal purposes. Steiner further stated that without his help the farm could not be operated successfully and that his absence for military service would cause his grandmother and aunt to have to relocate their place of residence, which would be detrimental to his grandmother's health, safety and welfare.

Two weeks prior to the filing of this form, Steiner's mother wrote the Local Board in support of his II–C agricultural deferment claim then on appeal. In the course of this letter she set forth that the farm had a value of approximately 60,000 dollars and that it had been held in trust for Steiner by her mother, her sister and herself. Steiner's dependency questionnaire information was also supported by letter statements which he filed from his aunt, his grandmother, two ministers and the local parish sheriff. On December 10, 1968, Steiner was notified that his claim for a hardship deferment had caused the Local Board to recall the file from the Appeal Board and to review it at their meeting [5] on December 4, 1968. The Board further stated that it was of the opinion that a reopening of Steiner's I–A classification to consider his entitle-

---

5. This recall and review action was necessitated by Steiner's claim of a *lower* classification than that which he had previously requested and appealed. 32 C.F.R. § 1623.2 requires that every registrant be classified in the lowest class for which he is determined to be eligible. Under this regulation Class III–A is a lower class than II–C. Thus, the pending appeal as to Steiner's entitlement to the higher class could not proceed in the face of his newest claim.

ment to a deferment for extreme hardship [6] was unwarranted and that the entire file would be forwarded to the Appeal Board for their review and determination. No response from Steiner is reflected in his file.

On December 30, 1968, Steiner supplemented the information before the Board by advising that he had taken a part-time job as a radio announcer for a Columbia, Louisiana, station which was estimated to bring him a salary of 2200 dollars per year. He requested that his dependency questionnaire form be revised to show the estimated amount he would contribute annually to his aunt and grandmother was 4000 dollars, in lieu of 3600 dollars. He further pointed out that his aunt was unable to attend to farm duties because of her health and full time employment.

On January 16, 1969, the Appeal Board refused relief and Steiner was ordered to report for induction on February 14, 1969. After intercessions by his mother and the American Friends Service Committee, Inc., the State Director postponed Steiner's induction for 30 days to permit him to review the file. At the request of his mother, Texas Lieutenant Governor Ben Barnes communicated his concern in the case and a further postponement of induction was granted to allow Steiner to appear for a non-procedural hearing before the Board.

As a result of this interview, Steiner was asked to furnish additional information concerning his income and the income derived by the farm's tenant. Another postponement was afforded for this information to be obtained. In addition to showing that the farm's share of 1968 "cash" crops had been 2500 dollars and the 1969 share was estimated to be 3200 dollars, the tenant stated that he might not be able to work this place at all during the 1970 year. Both Steiner

and his grandmother's doctor added letters indicating that Steiner's physical presence with his grandmother contributed to her health and well-being. On April 3, 1969, Steiner was advised that his request for reclassification had been denied and that he was ordered to report for induction on April 15.

The following week Steiner stated that circumstances beyond his control had arisen which entitled him to Conscientious Objector classification I–O. This development resulted in postponing Steiner's induction to June 5, 1969. The asserted change of circumstances which brought about his claim for conscientious objector classification subsequent to his notice to report for induction and subsequent to his notification that his other claims for deferment were unsuccessful, was the just announced decision in United States v. Sisson, 297 F.Supp. 902 (D.C.Mass.1969). Steiner contended that prior to his reading of this decision he had considered the law to be that only beliefs originating with an organized religious sect were sufficient to qualify.

The Board again refused to reopen his I–A classification and notified Steiner to report for induction on July 3, 1969. Steiner's mother once more interceded, this time with the President of the United States. Her action produced yet a subsequent review of Steiner's file by the State Headquarters of the Selective Service System. However, no error was found and his date of reporting for induction was maintained and his refusal to submit to induction ensued.

Steiner raises three contentions with regard to the Board's refusal to reopen to consider his III–A and I–O classification requests: (a) he made out a prima facie case requiring reopening under Mulloy v. United States, 398 U.S. 410, 90 S.Ct. 1766, 26 L.Ed.2d 362 (1970); (b) the Board acted without basis in fact as

6. (b) In Class III–A shall be placed any registrant whose induction into the armed forces would result in extreme hardship . . . to his . . . grandparent . . . who is dependent upon him for support. . . . 32 C.F.R. § 1622.30 (1969).

to each refusal to reopen; (c) the Board failed to state its reasons for not reopening. He also contends that the Local Board applied the wrong standard in adjudging his entitlement to conscientious objector classification. Steiner next asserts that his order to report for induction was void because Local Board 59 was invalidly composed, inasmuch as none of its members were residents within the Board's geographical jurisdiction. His final attack on Selective Service System procedures is that the Board minutes reflect action on so many individual cases within the period of time shown from opening to adjournment as to establish that the Board could not have given meaningful consideration to each case. Moving to his court prosecution, Steiner contends that his sincere belief that his order for induction was illegal demonstrates his refusal to submit to induction was not unlawful, wilful or knowing. His final contention asserts that the court improperly required the jury to find his conscientious objector status was based upon moral, ethical *and* spiritual conviction rather than framing the test in the disjunctive so as to require the presence of only one of the three elements.

■ In ultimate analysis, Steiner's appeal raises only one close issue—whether he made out a prima facie case for a dependency deferment which entitled him to the procedural rights attending a reopening. *Mulloy* teaches:

Where a registrant makes non-frivolous allegations of facts that have not been previously considered by his board, and that, if true, would be sufficient under regulation or statute to warrant granting the requested reclassification, the board must reopen the

registrant's classification unless the truth of these new allegations is conclusively refuted by other reliable information in the registrant's file. 398 U.S. at 416, 90 S.Ct. at 1771.

It [is] an abuse of discretion for the board not to reopen his classification, thus depriving him of his right to an administrative appeal. Id. 418, 90 S. Ct. at 1772.

However, the Court's caveat in *Mulloy's* final footnote must not be overlooked.

The Government argues that if the local board must reopen whenever a prima facie case for reclassification is stated by the registrant, he will be able to postpone his induction indefinitely and the administration of the Selective Service System will be undermined. But the board need not reopen where the claim is plainly incredible, or where, even if true, it would not warrant reclassification, or where the claim has already been passed on, or where the claim itself is conclusively refuted by other information in the applicant's file. *Id.* 418 n. 7, 90 S.Ct. at 1772.

Thus, under *Mulloy* and under the requirements of the Selective Service System's regulations,[7] the Board was required to determine whether Steiner had presented facts which would justify his deferment by showing that his induction into the Armed Forces would result in extreme hardship to his grandmother, who was dependent upon him for support.

■ Considered in isolation, Steiner filed a dependency questionnaire and supporting letters which indicated that his 73 year old grandmother lived on lands now owned by him which might

7. The local board may reopen and consider anew the classification of a registrant (a) upon the written request of the registrant . . . if such request is accompanied by written information presenting facts not considered when the registrant was classified, which, if true, would justify a change in the registrant's classification; . . . provided, the classification of a registrant shall not be reopened after the local board has mailed to such registrant an Order to Report for Induction (SSS Form No. 252) . . . unless the local board first specifically finds there has been a change in the registrant's status resulting from circumstances over which the registrant had no control. 32 C.F.R. § 1625.2.

not be available to her as a continued homestead if his personal attention to their management should be deprived by his induction. He was also needed to personally minister to her physical and emotional requirements. He further indicated that he was her sole means of financial support other than an annual income from Social Security approximating 1000 dollars.

However, this patent prima facie case dissolves when confronted with the requirement that the Board consider all of the information in an applicant's file in evaluating whether an applicant's case warrants reopening. When this procedure is applied to Steiner's claim, it plainly becomes incredible. His file, which is required to be kept current to within 10 days of any event that might result in justifying a different classification,[8] disclosed that Steiner attend college to pursue an education, not as a farmer but as a teacher, for each of the four years immediately preceding the assertion of his grandmother's extreme hardship dependency. During the entirety of this time he was supported in his college endeavors by his father and spent his summer vacations in employment both unrelated to the farm or any agricultural pursuit and geographically separated from his grandmother. Until he was face to face with the loss of his student deferment, the only hint of any connection with his grandmother came through occasionally listing her as a person who would know his whereabouts. Steiner's claim of financial support to his grandmother and aunt will likewise not withstand scrutiny. In fact, the only logical and reasonable deduction the Board could draw from all of the information before it was that Steiner's grandmother and aunt simply allowed him to claim that he had received the farm income they derived during the last year of his college work and pretend that he returned that income to them to give himself the appearance of making a contribution to their support. The documentation further shows that since the death of his grandfather over 10 years previously, his aunt and grandmother had leased the farm's productive acreage to a tenant who raised crops on shares. At best, Steiner raised only conjecture that this arrangement might not continue into the future. The documentation also disclosed without dispute that Steiner's spinster aunt, who had always lived with his grandmother, was employed full time, and that the unencumbered farm asset was worth 60,000 dollars.

This opinion has been full, if not fulsome, in its recitation of the facts disclosed by the information in the applicant's file, in order to demonstrate that Steiner's attempt to present a prima facie claim of entitlement based upon extreme hardship to a dependent grandmother, was in point of cold reality not only frivolous but also incredible. Even without considering the distinctions to be drawn between the relatively objective and somewhat comparative evaluation each Board must make in deciding what constitutes extreme hardship among those in its draft pool vis-a-vis the more subjective and standardized tests for evaluating a claim for conscientious objector classification, the Board's refusal to reopen on this hardship to dependents claim was well within the ambit of its regulations and was not an abuse of discretion under the test laid down in *Mulloy*.

 The remainder of Steiner's contentions may more readily be shown to lack merit. Steiner's claim that the Board abused its discretion in refusing

---

8. (a) No classification is permanent.
(b) Each classified registrant and each person who has filed a request for the registrant's deferment shall, within 10 days after it occurs, report to the local board in writing any fact that might result in the registrant being placed in a different classification such as, but not limited to, any change in his occupational, marital, military, or dependency status, or in his physical condition.
32 C.F.R. § 1625.1 (1969).

to reopen to consider his claim for a conscientious objector classification after the date he was notified to report for induction, is controlled by Ehlert v. United States, 402 U.S. 99, 91 S.Ct. 1319, 28 L.Ed.2d 625 (1971). That case upholds the System's power to defer for post-induction relief every claim for conscientious objector classification which is presented after the Board has mailed a notice to report for induction to the registrant, except those in which a change in status has resulted from circumstances over which the registrant had no control.[9] As we pointed out in United States v. Kilby, 446 F.2d 1002 (5th Cir. 1971), this had been the rule of the Fifth Circuit even before the Ninth Circuit decided and the Supreme Court affirmed *Ehlert.*

*Ehlert* further makes clear that a matter such as the decision in *Sisson, supra,* would not be such a circumstance as would come within the "unless" clause of this regulation. The court ruled the language, "circumstance over which a registrant had no control", should be confined to those objectively identifiable and extraneous circumstances (such as injury to the registrant or a death in the family, which makes the registrant the sole surviving son) that are most likely to prove manageable

without putting undue burdens on the Selective Service System. Steiner's claim fails for another reason. This court has clearly ruled in Gee v. United States, 452 F.2d 849 (5th Cir. 1971), that the decision of the United States Supreme Court in Welsh v. United States, 398 U.S. 333, 90 S.Ct. 1792, 26 L.Ed.2d 308 (1970), which still later enunciated the same rule as *Sisson,* did not change the law as it long previously had been announced in United States v. Seeger, 380 U.S. 163, 85 S.Ct. 850, 13 L. Ed.2d 733 (1965). Certainly, the fact that Local Board 59 chose to extend Steiner a courtesy interview in no way strengthens his case. United States v. Stockdale, 464 F.2d 147 (5th Cir. 1972).

Our holdings that Steiner failed to make a prima facie case with regard to his claim for a III–A exemption and that his late crystallizing conscientious objector claim did not require reopening under *Ehlert* standards, eliminates any need to consider his contention that the Board's denial of these reopenings were without basis in fact. They similarly dispose of the claim that the Board erred in failing to state reasons for grounds to support its decisions not to reopen.[10]

Steiner claims that the Board applied an erroneous standard of review in re-

---

9. *See* n. 7, *supra.*

10. At the time of these proceedings the Board was not required by its regulations or by law to state the reasons why it did not reopen a classification where the applicant presented no new facts showing prima facie entitlement to a deferment. Gee v. United States, 452 F.2d 849 (5th Cir. 1971); United States v. Solomon, 450 F.2d 456 (5th Cir. 1971). Authorities cited by Steiner to the contrary, *e. g.,* United States v. Stetter, 445 F.2d 472 (5th Cir. 1971), all involve situations in which a prima facie case has been established.

The then current regulation provided: When a registrant . . . files with the local board a written request to reopen and consider anew the registrant's classification and the local board is of the opinion that the information accompanying such request fails to present any facts in addition to those con-

sidered when the registrant was classified or, even if new facts are presented, the local board is of the opinion that such facts, if true, would not justify a change in such registrant's classification, it shall not reopen the registrant's classification. In such a case, the local board, by letter, shall advise the person filing the request that the information submitted does not warrant the reopening of the registrant's classification and shall place a copy of the letter in the registrant's file. No other record of the receipt of such a request and the action taken thereon is required.

32 C.F.R. § 1625.4 (1969).

Under present regulations reasons for a refusal to reopen must be placed in a registrant's file and furnished in writing to him.

36 F.R. 23378, effective September 12, 1971.

fusing to open his conscientious objector classification. This claim is based solely upon a statement made by a representative of the State Director in a letter addressed to Steiner's mother, in which this representative gave his views of why the Board acted. Without reaching or intimating an opinion upon the effect of a Board's announced erroneous application of a legal standard to the classification procedure of a registrant, we decline to reach the issue here where *Ehlert* has authenticated the regulations which clearly proscribed any reopening of Steiner's belated claim.

■ Steiner's next contention is that none of the Local Board's five members were residents of the area of its jurisdiction. He claims that no showing was made that it would have been impracticable to select membership of the Board from among persons resident in its jurisdiction and that the composition of this particular Board violates the System's own regulations.[11] Assuming *arguendo* that there was a defect in the composition of the Board, its actions would not be illegal. Sumrall v. Kidd, 468 F.2d 951 (5th Cir. En Banc (1972); Clay v. United States, 397 F.2d 901 (5th Cir. 1968), rev'd on other grounds, 394 U.S. 310, 89 S.Ct. 1163, 22 L.Ed.2d 297 (1969).

■ In what may be charitably characterized as an excess of zeal, Steiner's brief in this court accuses his Local Board of vigilantism. Even a cursory review of the voluminous record of years of careful attention to the artful proliferation of claims and positions advanced by this registrant readily demonstrates this contention to be absurd. The more precise claim in this vein is that the minutes of Local Board 59 demonstrate it acted formally upon a large number of classifications within a brief period of time. We are asked to deduce from this showing that Steiner was denied due process. We decline to do so in the face of literally hundreds of pages of records in his individual file which substantiate that time and time and time again the Local Board, the Appeal Board and the office of the State Director viewed, reviewed, considered and reconsidered his various claims and contentions. Steiner certainly cannot assert some unknown right of any other registrant processed on these occasions whose classification may well have been wholly free of doubt.

■ In his attack upon the procedures followed in his criminal prosecution, Steiner initially contends that he lacked a specific intent to violate the Selective Service Act because he thought his induction order was illegal, wherefore his refusal to comply with it carried no evil purpose or bad motive. This contention is wholly without merit. Steiner wilfully and knowingly refused to submit to induction at a time when he clearly understood that officials charged with administering the Selective Service System had determined that he should be required to do so. In this situation Steiner acted upon his determination that these officials were wrong at his peril. Only had he been right in determining that the procedures applied to his case resulted in an illegal order for induction, could his action be without consequence. Any different rule would put man above the law.

■ Finally, Steiner contends that the trial court erred in charging the jury that his conscientious objector beliefs had to be based upon moral, ethical *and* spiritual convictions. Not only did Steiner fail to object to this charge as required by Fed.R.Crim.P. 30, the record shows he actually invoked the conjunctive language chosen by the court by using the identical language in the request he made to the court to change its proposed charge. The charge as given merely reiterated the identical wording

---

11. (c) The members of the local board shall be citizens of the United States who shall be residents of the county in which their local board has jurisdiction and who shall also, if at all practicable, be residents of the area in which the local board has jurisdiction. 32 C.F.R. § 1604.52 (1969).

contended for by Steiner's counsel. *Ehlert, supra,* makes his contention relative to this portion of the charge harmless if not moot.

Viet Nam's true casualty toll cannot be reckoned from battlefield statistics alone. Without a doubt, the unique psychological impact of this nation's most unpopular war lies at the root of this family's transparently void attempt to cloak an only son with an unwarranted exemption from conscription. Nevertheless, such force as these truths possess must be directed to those sources of governmental power authorized to recognize and act upon them. The only test in this forum is one which assays for justice under law. The order to report for induction was valid. Defiance thereof was not. Joseph Ellwood Steiner, Jr. thus chose to walk a route which a jury of his peers has duly determined took him outside the law. Accordingly, the judgment and commitment is

Affirmed.