UNITED STATES of America,

v.

George C. SUNDSTROM, Defendant.

No. 71 Cr. 922.

United States District Court,
S. D. New York.

May 7, 1973.

Whitney North Seymour, Jr., U. S. Atty., for the S. D. N. Y., by George E. Wilson, Asst. U. S. Atty., New York City, for the government.

Alfred Lawrence Toombs, New York City, for defendant.

CANNELLA, District Judge.

The defendant's motion for a judgment of acquittal, made pursuant to Rule 29 of the Federal Rules of Criminal Procedure (F.R.Cr.P.), is denied.

This case was originally assigned and tried without a jury before Judge McLean, commencing on July 20, 1972 and continuing with some interruptions until

July 31, 1972. The defendant was charged in two counts with unlawfully and knowingly failing, neglecting and refusing to report for an Armed Forces physical examination on August 12, 1970 (50 U.S.C. App. § 462(a); 32 C.F.R. 1628.16), and with unlawfully and knowingly failing, neglecting and refusing to report for induction into the Armed Forces on September 16, 1970 (50 U.S.C. App. § 462(a); 32 C.F.R. § 1632.14). On July 31, 1972, Judge McLean found that the defendant did not receive the notice to report for the physical examination and found the defendant not guilty on Count 1.[1] As to Count 2, the court concluded that "apart from the order of call defense, the government has established defendant's guilt on Count 2 beyond any reasonable doubt".[2] The case was then adjourned to September 5, 1972 at which time the parties were to submit a joint factual memorandum on the status of each challenged registrant in connection with the order of call defense. The court commented: "Now, the only thing remaining is the question of the order of call defense and what I need is a roadmap to help me get through this mass of documents and pick out the few that are really involved".[3] Unfortunately, after the parties submitted their briefs and papers on September 5, 1972, Judge McLean died and the case was assigned to this court.

■ The court formally denied the defendant's motion for a mistrial on February 8, 1973 and gave the parties the opportunity to present further argument on February 13, 1973. Rule 25(a), F.R.Cr.P. provides that if a judge before whom a jury trial was commenced is unable to proceed with the trial by reason of death, any other judge regularly sitting in or assigned to the court, upon certifying that he has familiarized himself with the record of the trial, may proceed with and finish the trial. There is no statutory provision which deals with a similar situation in a non-jury trial. In a jury trial, the court decides questions of law while questions of fact are determined by the jury. In a non-jury trial, the court is both the finder of fact and law. Since provision is made for a successor judge to complete a jury trial where that judge need only resolve questions of law, a fortiori, a successor judge in a non-jury trial wherein there remain no questions of fact may proceed with the case and resolve questions of law.

■ In this action, there remain no questions of fact. The only aspect of the case that remained for Judge McLean to act on was to determine as a matter of law after he had examined the record whether or not the order of call regulations were violated. The complexity of order of call makes it an issue to be addressed to and decided by the court as a matter of law. See United States v. King, 455 F.2d 345, 353 (1st Cir. 1972). Moreover, there is no need for the court to hear witnesses or examine into their credibility on this issue. See generally Federal Deposit Ins. Corporation v. Siraco, 174 F.2d 360, 363 (2d Cir. 1949); Cahill v. Mayflower Bus Lines, Inc., 77 F.2d 838, 840 (2d Cir. 1935). The essential facts concerning the classifications of the challenged registrants and subsequent information received by the local board are undisputed. In short, the court finds that the determination required is one of law and not one of fact and therefore, the court is empowered to render judgment on the record of the evidence after hearing the argument and without hearing further testimony.

The court has read the entire record and briefs submitted by both sides. When the defendant stipulated that the case be tried non-jury, neither side requested that the court find the facts specially. See Rule 23(c), F.R.Cr.P.

---

1. The minutes which contain Judge McLean's oral findings are included herein as Appendix "A".

2. See minutes, supra note 1, p. 7.

3. See minutes, supra note 1, p. 12.

Nonetheless, Judge McLean did make findings as to both counts. Although, in the posture of this case, it is not necessary that this court make findings, the court fully concurs in all the findings made by Judge McLean as to both counts.

■ Because of the presumption of regularity which attaches to administrative proceedings the government is not required to prove as part of its case in chief that the defendant was called in proper order and not out of turn. United States v. Sandbank, 403 F.2d 38 (2d Cir.), cert. denied, 394 U.S. 961, 89 S.Ct. 1301, 22 L.Ed.2d 562 (1968). In order to make a *prima facie* showing that the order of call regulations[4] were violated the defendant must establish that enough collateral registrants existed who should have been inducted prior to the defendant but were not. The government must then show beyond a reasonable doubt by rebuttal evidence that the local board's action was not "so lacking in support of the record as to be arbitrary and capricious". United States v. Weintraub, 429 F.2d 658, 660 (2d Cir. 1970) cert. denied, 400 U.S. 1014, 91 S. Ct. 572, 27 L.Ed.2d 627 (1971).

At trial, the defendant claimed to raise the order of call defense by challenging the local board's delay in reviewing files and acting upon new information in cases involving deferred registrants classified 1–Y, 3–A, or 4–A.[5] The defendant contends that these registrants could have lost their eligibility for defendants and been classified 1–A prior to the time the defendant was ordered for induction. Only one challenge out of 24 registrants was directed at an individual with a 1–A classification.

In order to prevail on the order of call, the defendant contends that he must show that 9 of the challenged registrants were improperly bypassed by the board since the defendant's position on the delivery list was number 8 on a delivery list of 16. The government contends that the defendant's position is number 7 on the list making the magic number 10.

■ The court finds that the order of call defense is not properly raised with respect to the deferred registrants and that the government is entitled to the well-recognized presumption of regularity in these cases absent a showing of systematic preferential treatment of deferred classifications. The original bases for the classification of these registrants in a deferred category are conceded by the defendant and there is no Selective Service regulation which governs the frequency with which these deferred classifications are to be reviewed. The cases which have dealt with the subject of order of call have involved registrants who were listed as 1–A and older than the defendant. This required the government to demonstrate from those registrants' files why they were not called before the defendant in strict compliance with the order of call regulations. See, e. g., United States v. Dudley, 451 F.2d 1300 (6th Cir. 1971); United States v. Baker, 416 F.2d 202 (9th Cir. 1969).

■ In general, the court finds that the local board did not act arbitrarily and capriciously with regard to the deferred challenged registrants nor was its conduct predicated upon egregious individual error or a pattern of plain error or discrimination. See United States v. Griglio, 467 F.2d 572 (1st Cir. 1972); United States v. Holby, 345 F.Supp. 639 (S.D.N.Y.1972), rev'd on other grounds, 477 F.2d 649 (2d Cir. 1973). The court further finds that no showing was made that any of the deferments which were concededly proper at the time that they were made, should have been changed as to make available for the delivery list the name of any registrant that would have affected the defendant's number on

4. 32 C.F.R. § 1631.7.

5. A description and evaluation of the challenged registrants in deferred classifications appears herein as Appendix "B".

the list.[6] While the board's conduct is subject to some criticism, "[i]t is not the function of this court to undertake a full-scale review of administrative procedure, or to establish arbitrary time deadlines. Where the regulations provide such deadlines, they will be enforced. Otherwise, in the absence of intentional delay, discriminatory treatment, or favoritism, the administrative action will be upheld". United States v. Smith, 443 F.2d 1278, 1280 (9th Cir. 1971). See also United States v. Howells, 452 F.2d 1182, 1185 (9th Cir. 1971), cert. denied, 406 U.S. 925, 92 S. Ct. 1794, 32 L.Ed.2d 126 (1972). The defendant's local board cannot be expected to act with absolute perfection, particularly where the board must process 4500 registrants of which 2900 are active cases with a working personnel of one full time and one part time clerk. The court finds that the board did the best it could with the available tools.

As to Count 2, the court finds that all the elements of count 2 have been proven by the government by credible evidence beyond a reasonable doubt and it finds the defendant guilty as charged.

An investigation and pre-sentence report is ordered and sentence is set for June 19, 1973.

## APPENDIX A

(Trial resumed.)

THE COURT: Now we'll take up Count 1 first.

The indictment, in Count 1, charges that on or about August 12, 1970, the defendant knowingly failed, neglected and refused to perform a duty required of him by the Selective Service Act, in that being a registrant to whom an order to report for an Armed Forces physical examination had been mailed by his Selective Service System local board, he unlawfully and knowingly did fail, neglect and refuse to report for the physical examination.

The order of call defense, which has been raised by the defendant with respect to Count 2 does not apply to Count 1.

The government has proved beyond a reasonable doubt that on July 15, 1970, Local Board 17 mailed to defendant at the address which defendant had previously told the board about, namely, Marion Junction, Alabama, an order to report for an Armed Forces physical examination, by reporting to the local board at Monticello, New York, on August 12, 1970.

The government has also proved beyond a reasonable doubt that defendant did not report as directed for that examination. The defendant claims that he was insane at the time, in the sense of United States against Freeman; that is, that by reason of mental disease or defect his capacity to appreciate the wrongfulness of his behavior or to conform his behavior to the requirements of law was impaired.

The evidence of the respective psychiatrists on this question is conflicting.

On the basis of all the evidence, including my opportunity to observe the defendant while he was testifying on the witness stand, I find that he was able to appreciate the wrongfulness of his behavior and to conform his behavior to the requirements of law; that he was sane and mentally competent at the time of the offense charged in Count 1.

The question remains as to whether his failure to report on August 12, 1970, was knowing and wilful. The defendant testified that he did not receive the notice to report. He testified that he had left Alabama on July 15th and traveled north in gradual states, eventually arriving in the vicinity of Boston, Massachusetts.

On August 8, 1970, he wrote to Local Board 17, stating that his new address was 78 Linden Street, Allston, Massa-

---

6. The court finds that the so-called magic number was neither 9 or 10 and that a more specific finding is not necessary since the defendant's position on the list was such that neither number was critical. Judge McLean found the magic number to be 10. See minutes, supra note 1, p. 8.

chusetts, which is near Boston. The board did not receive this communication until August 11, 1970. I believe the defendant's testimony in this respect. I find that he did not receive the notice and that he did not know that he had been ordered to report on August 12, 1970.

The evidence indicates that defendant was careless in arranging to have his mail forwarded to him from Alabama to Boston. The board's notice, sent from Monticello to Alabama on July 15th in all likelihood arrived in Alabama a few days later. It would seem that there was plenty of time to forward this mail to defendant so as to reach him in Allston, Massachusetts, well before August 12. I conclude, however, that any carelessness on defendant's part in this respect, in looking after his affairs and seeing that his mail was properly handled and forwarded, is not the equivalent of a wilful and knowing failure to appear on August 12.

I find the defendant not guilty on Count 1.

Count 2 charges that on September 16, 1970, and up to and including the date of the filing of this indictment, the defendant unlawfully and knowingly did fail, neglect and refuse to perform the duty required of him under the Selective Service Act in that being a registrant to whom an order to report for induction had been mailed by his Selective Service System local board, he unlawfully and knowingly did fail, neglect and refuse to report for induction into the Armed Forces.

The government has proved beyond a reasonable doubt that on August 17, 1970, Local Board 17 mailed to defendant at his address, 78 Linden Street, Allston, Massachusetts, an order to report for induction into the Armed Forces on September 26, 1970, by reporting at Local Board 17 in Monticello, New York, on that day.

It was also proved beyond a reasonable doubt that defendant did not report on September 16 as directed and it is proved beyond a reasonable doubt that defendant received the notice of induction and knowingly and willfully failed to report.

The defendant has pleaded insanity to this count as well. As in the case of the first count, I find on all the evidence that the defendant was able to appreciate the wrongfulness of his behavior and to conform his behavior to the requirements of law; that he was sane and mentally competent at the time of the offense charged in Count 2. The order of call defense, which applies to this count, will be discussed later.

The defendant has raised certain other defenses to this charge which I will now consider. Defendant claims that he believed that the board did not legally send him an induction notice because he had not had a preinduction physical examination. I think that the defendant did in fact entertain that belief. His belief, however, was mistaken. Under the regulations then in effect the board's action was proper in sending the induction notice to the defendant, since he had failed to report for a physical examination. Defendant's ignorance of the law was no excuse for his failure to obey the induction order. Moreover, he was not entitled to rely upon his own views as to the law. It was his duty to obey the order and, thereafter, to challenge the validity of the order, if he so desired, by habeas corpus after his induction, if he was accepted for service.

Defendant further claims that the board should have realized, because of certain communications which he sent to the board, that he was a conscientious objector, and should have sent him a Form 150, I believe the number is, for him to use in applying for exemption as a conscientious objector. Defendant never requested that the board send him this form; he never informed the board that he claimed to be a conscientious objector. The communications upon which he relies—notably, his answer to the Current Information Questionnaire received by the board from the defendant on April 13, 1970, in an envelope

covered by the defendant with scrawled remarks (Government Exhibit 2G)—constituted merely an expression of defendant's political and social views. It does not amount to a proper claim of conscientious objector status.

Defendant further claims that the board should have answered his inquiries. In fact, the board did answer at least two of them. I refer to Government Exhibit 2C, February 19, 1970, and Government Exhibit 2H, April 30, 1970. The board did not answer defendant's communication dated May 3, 1970, in which defendant stated that he was not a minister of the Universal Life Church. I conclude that the board was justified in ignoring this communication. The evidence shows that the State Selective Service Headquarters had information showing in substance that this so-called Universal Life Church was a fraud. It is a reasonable inference, and I so find, that the State Headquarters had advised the local board of this information.

Defendant testified on this witness stand that he was an ordained minister of this Church and that he became ordained merely by sending for and receiving a certificate. This is absurd and I am satisfied that defendant knew and now knows that it was absurd and that, in fact, he had no such belief and that in claiming to be a minister, he was not acting in good faith. He was not prejudiced by the board's failure to answer his communication.

Finally, I find that after defendant had sent these communications to the board, the board, after considering them, classified defendant 1–A and, on July 17, 1970, mailed to defendant a notice of this classification and advised him of his right to personal appearance before the board and his right of appeal. The defendant received this notice, was aware of his rights and did not avail himself of his rights. He has thus failed to exhaust his administrative remedies and may not now complain of his classification.

I find nothing in the board's conduct which would justify this defendant in wilfully failing to obey the order of induction. My conclusion is that apart from the order of call defense, the government has established defendant's guilt on Count 2 beyond any reasonable doubt.

I now turn to the order of call defense. The call from State Headquarters to Board 17 was sent on August 10, 1970 (Government Exhibit 10). It calls for the board to furnish sixteen men on September 16, 1970. The delivery list (Defendant's Exhibit P) was prepared on August 12, 1970, for the September 16 delivery. It contained the names of 19 men, not 16. For some reason, the names are not listed as they apparently should have been in order of their respective random selection numbers, i. e., lottery numbers.

After arranging them in proper order, there appear to be eight men with lottery numbers higher than the defendant. On that basis, the so-called "magic number" would be 9. The government has introduced evidence, however, to the effect that certain names on the list are not chargeable to this call and that after eliminating those names, defendant's position is number 7 on a list of 16, so that there would be nine men with lottery numbers higher than his and, on that basis, the so-called "magic number" would be 10.

This evidence is not controverted and I accept it. The question, therefore, is whether or not ten or more registrants were improperly bypassed, to use the language which has become more or less current in these order of call cases.

We are concerned in the first instance with 24 men whom defendant claims should have been called for induction before him. They are listed on Defendant's Exhibit N. Of the 24, only one was classified 1–A. I find that there was a basis in fact for the board's decision not to include him on the delivery list prepared on August 12, 1970, the basis in fact being that the board had been

notified that this registrant would enter Sullivan County Community College in the fall of 1970.

The board decided that it would be fair and proper to wait and see whether he did or not and, therefore, did not put him on the September 16th list. I think this was within the board's power, to make this determination.

According to my records of the testimony, of the remaining 23 registrants, four were classified 3–A, one was classified 4–A, and the remainder were classified 1–Y. The defendant does not challenge the propriety of the original classification of these registrants. His contention, in substance, is that before August 12, 1970, the board should have reclassified them 1–A on the basis of information received by the board after these registrants were originally given a deferred classification.

I have spent a great deal of time on this case over the weekend. I have not found any decision which approaches this order of call defense in this fashion. Most of the cases appear to be concerned solely with registrants who were classified 1–A, whom the defendant claims should have been called before he was. There are indications in one or two cases that perhaps some people who were not classified 1–A were considered by the court in deciding whether or not they were properly bypassed. I have found no case in which 23 out of 24 of the challenged registrants were not in 1–A.

I could, I suppose, decide at this point that under the circumstances here in issue in this unusual situation, the order of call defense has not been properly maintained. I want, however, to be sure of the facts with respect to each of these 23 registrants. I have struggled with these files over the weekend and there simply have not been enough hours in the weekend to enable me to complete that task. These files are hard to read, as I am sure you gentlemen know. The papers are not arranged in any order. It seems to take approximately one hour per file to try to disentangle what happened in the case of a particular registrant and there just haven't been enough hours to do it.

Now, I have decided, much as I hate to postpone this one remaining aspect of this case, that in fairness to both sides, I should postpone it until I have a clear conception of what the evidence is with respect to each of these registrants.

I therefore am not going to make a decision at this time on the order of call defense and it is going to be necessary, I am afraid, to postpone that until after my return to New York, which I will say will be immediately after Labor Day.

I am going to ask counsel on both sides to help me in this. What I want is a memorandum which will take up each of these challenged registrants, which will state at the beginning what his classification was. I think I have it right but there are a few of the so-called 1–Ys where, as far as I can make out, nobody actually said they were 1–Y but I think they are or were and, certainly, that can be determined from the file.

So, take up each man, state what his classification was, when he was given that classification and what happened since, up to August or September 1970.

Now, I want you, if you will be so good, to put down specifically, by date, the exact paper or entry that shows what happened and, finally, it would be helpful if you would, when you get through with the file, put the relevant papers on top so that I won't have to hunt through a mass of disorganized material trying to find them. In that way, it should be possible for me very quickly to be sure of the facts with respect to each of these registrants and I would hope that you could agree on this. I appreciate that your positions are completely antagonistic, as far as the legal conclusions that you want me to draw are concerned but I don't see any reason why there should be any disagreement as to what the man's classification was, what he said or what information the

board had which conceivably bears upon the propriety of continuing that classification and what the documents are that give that information.

Hopefully, you can give me a joint memorandum which will specify this data. Then, you are each at liberty to make whatever arguments you want. I have read a lot of these cases but I don't represent that I have read every one of them. You can cite me any cases you want to but, please get that factual data clearly stated per registrant, per date, per document and, when I get back on September 5 or whatever the date is, I will find these memos awaiting me, I trust. You can have the whole month of August to write them, as far as I am concerned, as long as you get it in my offices by September 5 and I'll promise you a very prompt decision after that.

Now, the only thing remaining is this question of the order of call defense and what I need is a roadmap to help me go through this mass of documents and pick out the few that are really involved.

So, I will have to adjourn it then until after I get that material and I'll make a decision promptly and let you know what it is.

MR. TOOMBS: Thank you, your Honor.

MR. WILSON: Thank you, your Honor.

THE COURT: I am going to return this big book of Army Regulations but I probably ought to have it back again, because I noticed from my notes that that was referred to several times. Here is the mass of files of all the challenged registrants. I will turn the exhibits in this case back to you but these are all here and neatly in order. I doubt if you'll need them for this purpose, so please let me have them back by September 5.

(Court adjourned.)

### APPENDIX "B"

**3–A Registrants:** Registrant # 1 was classified 3–A on November 23, 1965 because of fatherhood. On February 5, 1969, he indicated on a current information questionnaire that he was not living with his wife, although he maintained the same mailing address. Registrant # 10 was classified 3–A on May 11, 1965 because of fatherhood. In 1969, he stated that he wanted to go despite the fact that he had four children but was separated from his wife. Registrant # 11 was classified 3–A on November 19, 1968 because of his wife's pregnancy. Later, his wife apparently suffered a miscarriage. Registrant # 20 was classified 3–A on October 18, 1966 because of anticipated fatherhood. On December 5, 1969, he indicated that he was not living with his wife or child. In paternity deferment cases the local board had a policy of requiring a current information questionnaire (SSS Form 127) every two years. The court finds that the board's policy was not unreasonable. The defendant has failed to show any pattern of discrimination in the continued classification of these registrants in a deferred category.

**1–Y Registrants:**

Medical: Registrant # 2 was classified 1–Y on August 20, 1968 for a diabetes condition. Certain questionnaires do not indicate a claim of that medical defect. Registrant # 5 received his 1–Y classification on August 25, 1964 because of bronchial asthma. He claimed he was no longer ill in 1969 but did not submit medical evidence. Registrant # 8 was classified 1–Y on January 9, 1968 for various medical reasons. Re-examination was believed justified. A condition of deafness was still indicated on subsequent questionnaires. Registrant # 9 was found mentally retarded and deferred on July 13, 1965. Three subsequent questionnaires indicate that he was working as a messenger. Registrant # 13 was classified 1–Y on March 19, 1968 because of a perforated eardrum. Registrant # 23 was classified 1–Y on May 13, 1969 because of an overweight condition. Re-examination was believed justified but the registrant stated on two subsequent occasions that

the condition was not corrected. In these cases the court finds no arbitrary or capricious action by the board which in any way caused the defendant to be called out of turn.

Certain registrants were given their 1–Y deferments after limited service in various branches of the Armed Forces. Registrant # 6 was discharged from the Air Force for bronchial asthma and classified 1–Y on July 13, 1965. He was not re-examined. Registrant # 12 was discharged because of psoriasis and deferred on February 14, 1967. In 1968 and 1969 he indicated that he was still undergoing treatment. He did not state this in April, 1970. Registrants # 16 and # 18 were classified 1–Y on February 11, 1969 and August 20, 1968 respectively, after their discharge for medical disabilities. Evidently, registrant # 18 went berserk. Similarly, with respect to these registrants, the court finds no discriminatory or irrational behavior on the part of the board.

Mental: Certain registrants were classified 1–Y because of a disqualifying score on the mental test. In some cases this was because of a language difficulty. Registrant # 3 was deferred on August 25, 1964 with an AFQT score of 8. A year or so later he claimed he could speak English. Registrant # 7 failed the mental test twice with successive scores of 40 and 17. Later he was convicted for petit larceny. Registrants # 14 and # 15 scored very poorly on the qualifying test probably because of a language difficulty. Registrant # 14, having failed a second time in 1968, indicated to the board in 1969 that he had graduated high school and was attending junior college. Registrant # 19 was deferred on October 18, 1966 with a score of 15. The court finds that the board acted properly and in accordance with Selective Service regulations and therefore finds no merit in any of these challenges.

Moral: Registrant # 4 was classified 1–Y on April 25, 1967 because he was pending trial. Apparently, he was still pending trial in 1968. In 1969, he failed to return the current information questionnaire. The court finds that the board's failure to verify this registrant's status does not amount to egregious individual error or a pattern of plain error.

4–A Registrant: Registrant # 17 was classified 4–A on April 7, 1970. He was discharged after six months service in the Navy. The court finds that this registrant was clearly ineligible for induction.

Challenges to Registrants # 21 and 22 were withdrawn.

In sum, hindsight concerning the board's policy of checking the registrants' current status, no doubt brings to mind that a better system could have been used. However, in totality, the board's decisions and policy do not indicate that they rose to the level which would cause this court to declare them to be arbitrary and capricious or that they were directed to the detriment of this defendant and others similarly situated.