**UNITED STATES of America,**
**Appellee,**

v.

**George Charles SUNDSTROM,**
**Appellant.**

**No. 395, Docket 73–1949.**

United States Court of Appeals,
Second Circuit.

Argued Nov. 14, 1973.

Decided Dec. 27, 1973.

Alfred Lawrence Toombs, New York City, for appellant.

George E. Wilson, Asst. U. S. Atty. (Paul J. Curran, U. S. Atty., for the Southern District of New York, S. Andrew Schaffer, Asst. U. S. Atty., of counsel), for appellee.

Before KAUFMAN, Chief Judge, and SMITH and OAKES, Circuit Judges.

J. JOSEPH SMITH, Circuit Judge:

This appeal presents the rather unusual question of whether a successor

judge can enter a conviction after his predecessor in a non-jury trial has made detailed factual findings, but has left the verdict open in order to consider an essentially legal defense. Because we believe Judge McLean, the trial judge, had decided all relevant factual questions against appellant before his untimely death, and that Judge Cannella, the successor judge, thereafter properly found that appellant had failed to establish his "order of call" defense,[1] we affirm the two judges' necessarily cumulative verdict.

Appellant's selective service problems began in January of 1970 when he was ordered to a pre-induction physical. He immediately wrote to his local board requesting information on various deferments and a change in the location of the physical; the board promptly complied with both requests. In April, approximately one month before the physical was to occur, the board received appellant's annual "Current Information Questionnaire," which was covered with a rather bizarre potpourri of his "political and social beliefs." A few days later, appellant again wrote to the board requesting information on medical exemptions and board personnel; the board again replied promptly. Finally on May 7, a few days before the rescheduled physical, appellant once again wrote to the board to claim an exemption as a newly ordained minister in the Universal Life Church. This time the board did not respond, apparently because it had been advised, as Judge McLean later found, that the "church" was a total fraud.

On May 18, appellant reported for his physical dressed in black robes, veil, and facial make-up—his representation of the "death symbol." The examination center psychiatrist, who interviewed this apparition before he was ejected, concluded that appellant was merely malingering and reported the performance to the local board. The board thereupon ordered appellant to a second physical, but the notice failed to reach the potential inductee who was traveling about the country without benefit of a forwarding address.[2]

After learning that appellant had failed to appear for his second physical, the board ordered him to report for immediate induction, pursuant to a new selective service regulation allowing such orders without the formerly required pre-induction physical.[3] In September, approximately two weeks before this induction was to occur, appellant informed the board by letter that his physical acceptability had not yet been established and that he was, therefore, returning the induction order which he believed to be erroneously issued.

Rather than explaining that a pre-induction physical was no longer required, the board reported appellant as a violator. However, at the behest of the Justice Department, the board gave appellant one more chance to comply. Again appellant received the notice of his induction, which was now scheduled for December, in ample time to comply; but he nevertheless waited until the appointed day to remind the board that they were powerless to induct him without a

1. For a brief discussion of the elements of the defense, *see* p. 862 *infra*. *See also*, United States v. Strayhorn, 471 F.2d 661, 662–664 (2d Cir. 1972); United States v. Weintraub, 429 F.2d 658, 659–660 (2d Cir. 1970), cert. denied, 400 U.S. 1014, 91 S.Ct. 572, 27 L.Ed.2d 627 (1971).

2. Judge McLean found that appellant's careless failure to provide a forwarding address negated the conclusion that his failure to appear was willful and knowing. Accordingly, Judge McLean acquitted appellant on the

separate count of failing to report for the physical. 359 F.Supp. 1252, 1255–1256.

3. The former regulation, 32 C.F.R. § 1631.-7(a) had required that a registrant be given twenty-one days notice *after* his acceptability had been established at a pre-induction physical. This requirement was rescinded by Local Board Memorandum 106, providing that a registrant who failed to report for his pre-induction physical would be ordered to an immediate induction and simultaneous examination.

physical. After this second failure to report, prosecution began.

Appellant was tried in July of 1972 before Judge McLean, who, after six days of testimony, rendered detailed factual findings to the effect that "apart from the order of call defense, the government has established the defendant's guilt . . . beyond a reasonable doubt."[4] Judge McLean then asked opposing counsel to prepare a summary of the selective service files of the challenged registrants to aid him in his evaluation of the order of call defense. The summaries were prepared, but Judge McLean died before ruling on the defense or rendering a final verdict.

Judge Cannella, who was assigned the case, recognized its unusual posture, but nevertheless concluded that the only unresolved issue, the order of call defense, was a legal matter which he as successor judge could determine on the basis of the selective service records and regulations before him. After reading the entire record and briefs submitted by both sides, Judge Cannella proceeded to hold that appellant had failed to demonstrate that a sufficient number of the challenged registrants were improperly classified, and that therefore the two induction orders were valid. Judge Cannella thereupon entered a judgment of conviction based on his and Judge McLean's findings.

## I. The Order of Call Defense

Appellant's primary contention is that Judge Cannella had no authority to rule on the order of call defense since it was a mixed question of law and fact that could be decided only by Judge McLean, the trier of fact. In this regard, it should be noted that this is a highly unusual case—apparently one of first impression—in that the trial judge died *after* making his factual findings, but *before* rendering a final verdict. Thus the government concedes that had Judge McLean died before stating his factual conclusions, a mistrial would have been mandated. And appellant concedes that had Judge McLean rendered a final verdict, any subsequent legal motions could have been argued before, and sentence could have been imposed by, a successor judge under Rule 25(b) of the Federal Rules of Criminal Procedure.[5]

■ Unfortunately, the framers of Rule 25 apparently never anticipated the facts of this case, and the rule therefore provides no direct answer to our problem. Nevertheless, we believe—and appellant apparently agrees—that the intent behind Rule 25 was to perpetuate the traditional dichotomy between "law" and "fact," and thus authorize a successor judge to decide purely legal matters, while reserving to the original judge any question of fact.

■ The problem thus becomes: Was appellant's order of call defense—in which he had to demonstrate that the board acted arbitrarily in ordering his induction while bypassing others who should have been called first—a question of "law" or "fact"? We think that in

---

4. Judge McLean also rejected appellant's defenses that he was exempt as a conscientious objector, that he should have been deferred as a minister in the Universal Life Church, and that he was temporarily insane, 359 F.Supp. 1252, 1255–1257.

5. Fed.R.Crim.P. 25:
(a) *During Trial.* If by reason of death, sickness or other disability the judge before whom a jury trial has commenced is unable to proceed with the trial, any other judge regularly sitting in or assigned to the court, upon certifying that he has familiarized himself with the record of the trial, may proceed with and finish the trial.
(b) *After Verdict or Finding of Guilt.* If by reason of absence, death, sickness or other disability the judge before whom the defendant has been tried is unable to perform the duties to be performed by the court after a verdict or finding of guilt, any other judge regularly sitting in or assigned to the court may perform those duties; but if such other judge is satisfied that he cannot perform those duties because he did not preside at the trial or for any other reason, he may in his discretion grant a new trial.

this case, the defense was a purely "legal" matter.[6]

In United States v. Strayhorn, 471 F. 2d 661, 665 (2d Cir. 1972), we held, "the order of call defense, going as it does to the validity of the induction order, is properly heard by the court, not the jury." This conclusion is, in turn, derived from Cox v. United States, 332 U. S. 442, 452–453, 68 S.Ct. 115, 92 L.Ed. 59 (1947), where the Supreme Court first held that the validity of an induction order, and the review of the administrative proceedings behind it, were questions for the court, rather than the jury. *See also,* United States v. King, 455 F.2d 345, 353 (1st Cir. 1972); United States v. Jones, 431 F.2d 619, 621 (9th Cir. 1970), cert. denied, 401 U.S. 926, 91 S.Ct. 882, 27 L.Ed.2d 829, reh. denied, 401 U.S. 1014, 91 S.Ct. 1251, 28 L.Ed.2d 553 (1971); United States v. Lloyd, 431 F.2d 160, 164 (9th Cir. 1970), cert. denied, 403 U.S. 911, 91 S.Ct. 2210, 29 L.Ed.2d 688 (1971).

This is not to say that order of call cases will never involve factual determinations. Such questions will arise once the defendant has demonstrated that he would not have been called were it not for errors or irregularities in board procedures. Once such an "apparent departure" from the proper order of call has been shown, the burden shifts to the government to explain the irregularity in terms other than pure arbitrariness or discrimination against the defendant —a factual question which may well involve the very credibility of local board officials. *See,* United States v. Weintraub, 429 F.2d 658, 660 (2d Cir. 1970), cert. denied, 400 U.S. 1014, 91 S.Ct. 572,

27 L.Ed.2d 627 (1971); United States v. Griglio, 467 F.2d 572, 575 (1st Cir. 1972); United States v. Strayhorn, 471 F.2d 661, 663–664 (2d Cir. 1972).

Here, however, no such factual inquiry was necessary, for appellant failed to prove that even one of the challenged registrants had been unreasonably bypassed.[7] Our own review of the file summaries—together with Judge Cannella's discussion, 359 F.Supp. 1252, 1259–1260—convinces us that appellant simply was not called prematurely. In this regard, it should be noted that though appellant strenuously argues that the order of call issue is factual in nature, he has not indicated any instance where Judge Cannella's conclusion is "factually" incorrect.

In sum, we hold that since appellant failed to demonstrate that a sufficient number of other registrants were improperly bypassed, the order of call defense *in this case* presented only questions of law—based solely on legal records and regulations—which Judge Cannella, as successor judge, was entitled to decide.

## II. The Finding of Willfulness

Appellant advances a two-pronged attack on the finding that his conduct constituted a willful failure to report for induction. There is, of course, no doubt that Judge McLean made such a finding, and that in so doing he explicitly rejected appellant's contention that he was justified in refusing to report because he mistakenly believed the former regulation requiring a pre-induction physical was still in effect.[8]

6. In view of our finding that only legal questions remained after Judge McLean's death, we must reject appellant's analogy between this case and those involving the death or disability of a juror. In the jury context, such disability before a final verdict will result in a mistrial unless the defendant waives his right to a full panel. Fed.R. Crim.P. 23(b). Since the fact-finding function had been completed by Judge McLean, arguments based on jury-related rights which appellant would have retained had he

not waived his right to jury trial are clearly inapposite.

7. There was some disagreement as to whether appellant had to demonstrate that nine or ten of the twenty-four challenged registrants were improperly classified. Judge Cannella found it unnecessary to resolve this dispute since appellant failed to demonstrate that any were so bypassed. D.C., 359 F.Supp. 1252, 1254–1255 & n. 6.

8. Defendant's ignorance of the law was no excuse for his failure to obey the induc-

■ Appellant contends, however, that this factual question was left open at the time of Judge McLean's death. He notes that a few days before Judge McLean made his findings, the judge asked defense counsel, in a rather rhetorical fashion, whether he could cite any precedent for his position that ignorance of the selective service law was a justification for refusing to report. Here appellant relies solely on Brennan v. Grisso, 91 U.S.App.D.C. 101, 198 F.2d 532 (1952), a decision applying Rule 63 of the Federal Rules of Civil Procedure —the counterpart of Rule 25 in the Criminal Rules. *Brennan* is, however, clearly inapposite, since there the trial judge merely expressed orally his views on some of the issues but did not make any explicit factual findings. Moreover, the additional evidence presented to the trial judge was relevant to a critical factual determination. Here, by contrast, Judge McLean's rather rhetorical query *prior* to his explicit rejection of appellant's position constituted, at very most, an indication that he would consider further *legal* argument. But such argument, as discussed above, would just as properly have been considered by Judge Cannella, who apparently had just as little sympathy for this defense.

■ Appellant's second line of attack is that both Judges McLean and Cannella simply failed to appreciate his "mistake of law" defense. The short answer to this contention is that, as has been repeatedly held, even a good faith belief, on advice of counsel, that one is exempt from selective service does not justify a refusal to obey an induction order. United States v. Mercado, 478 F.2d 1108, 1111 (2d Cir. 1973); United States v. Steiner, 469 F.2d 760, 769 (5th Cir. 1972); United States v. Jacques, 463 F. 2d 653, 657 (1st Cir. 1972); United States v. Stom, 448 F.2d 1332, 1333–1334 (9th Cir. 1971); United States v. Wood, 446 F.2d 505, 507 (9th Cir. 1971); United States v. Goodman, 439 F.2d 810, 812–813 (9th Cir. 1971), cert. denied, 404 U.S. 832, 92 S.Ct. 77, 30 L. Ed.2d 61 (1971).

■■ This is not to say that in assessing willfulness the trier of fact may not consider a good faith, though mistaken, belief based on a legitimate disagreement with selective service officials. But it does mean that we cannot, as a matter of law, overturn Judge McLean's completely reasonable finding that appellant's obdurate assertion of what was never more than a mere technicality in the face of two valid induction orders constituted a willful failure to comply.[9]

Affirmed.

OAKES, Circuit Judge (concurring): I concur in the result.

---

tion order. Moreover, he was not entitled to rely upon his own views as to the law. It was his duty to obey the order and, thereafter, to challenge the validity of the order, if he so desired, by habeas corpus after his induction, if he was accepted for service.
359 F.Supp. 1252, 1256.

9. Similarly, we must also reject appellant's contention that the local board had an af-

firmative obligation in this case to disabuse him of his misconception that a pre-induction physical was still required. While a board may not mislead a registrant as to his fundamental rights, and while it might have been, in any event, better practice to have corrected appellant, we do not think the board was obligated to continue its running debate with a registrant who was adamantly asserting an outdated technicality without ever seeking a clarification of his status.